In the Matter of Eric C. Wehr et al., Doing Business as Micro Instrument & Tool Co., Appellants, against Harry B. Crowley et al., as Members of the Board of Zoning Appeals of the City of Rochester, Respondents, and Flower City Builders Supply Corp. et al., Intervenors-Respondents.

Fourth Department, July 10, 1958.

*J. Frederick Colson* for appellants.

*Honora A. Miller, Corporation Counsel (James H. Boomer* of counsel), for respondents.

*Albert E. Goldman* for Flower City Builders Supply Corp., intervenor-respondent.

*Stewart D. Moot* for Lois M. Dunn, intervenor-respondent.

HALPERN, J. This is an appeal from an order of the Special Term dismissing a proceeding brought under article 78 of the Civil Practice Act to review a determination by the Board of Zoning Appeals of the City of Rochester.

The facts as developed in the record are as follows:

The Flower City Builders Supply Corp. (one of the intervenors-respondents) applied on June 14, 1957, to the superintendent of buildings of the City of Rochester for a permit to erect two masonry buildings on premises known as 1275 Mt. Read Blvd. in the city of Rochester, one building to be used as an office and warehouse and the other to be used for the manufacure of cement blocks, cinder blocks and accessories.

The premises in question were zoned in a " C Light Industrial District ". Under section 91-23 of the Zoning Ordinance of the City of Rochester (City Ordinances, ch. 91, Ordinance No. 1536), the permissible uses in a " C Light Industrial District " are the same as those in a " D Light Industrial District ",

as set forth in section 91-22 of the ordinances. Under that section, no structure or premises may be used for:

" 3.   Brick pottery, tile and terracotta manufacture.

\*   \*   \*

12.   Lime, cement or plaster of Paris manufacture.

\*   \*   \*

18.   Rock or stone crusher.

\*   \*   \*

32.   Any trade, industry or use which is or may be injurious, noxious or offensive by reason of vibration, or noise, or the emission of dust, odor, smoke, gas or fumes."

The superintendent of buildings denied the application, apparently being of the opinion that the proposed use fell within one of the forbidden categories. The Flower City company thereupon appealed to the Board of Zoning Appeals. The attorney for the Flower City company, at the hearing, indicated that he was seeking a " variance " from the " strict letter " of the ordinance. He referred to the fact that his client had entered into a contract for the purchase of the premises " subject to a variance being granted by this Board." However, the term " variance " seems to have been a misnomer. The Flower City company offered no proof of " practical difficulties or unnecessary hardship " in the carrying out of the ordinance, as required by subdivision 4 of section 81 of the General City Law for the obtaining of a variance. Apparently, what the Flower City company was really seeking was a determination by the board that its proposed use did not fall within any of the forbidden categories enumerated in section 91-22 of the Zoning Ordinance.

The proposed use clearly did not fall within subdivisions 3, 12 or 18 of section 91-22 but the question of whether it fell within subdivision 32 presented a sharply controverted question of fact.

The board held a hearing upon notice to all the property owners within a 200-foot radius of the premises in question, pursuant to section 7 of article 3 of the Rules and Regulations of the board. Upon the hearing, the petitioners-appellants, who owned and operated a business known as the Micro Instrument & Tool Co. on premises adjoining the premises in question, appeared and interposed objection to the granting of the permit. The owners of various residential properties within a 200-foot radius also appeared and objected. The objectors contended that the proposed use would cause a great deal of dust and noise and also that the vibration incident to the use

would affect their premises. The attorney for the petitioners-appellants pointed out that his clients had expended several hundred thousand dollars for the installation of super-sensitive machines which they used in the manufacture of precision instruments and he stressed the great harm which would result from dust or vibration affecting these machines. On the other hand, the attorney for the Flower City company contended that no dust or vibration would be caused by the operation.

The hearing was a very unsatisfactory one. It consisted merely of general assertions by the representatives of each side to the controversy. There was no description of the process of manufacturing cement or cinder blocks, from which any conclusion could be drawn as to whether the assertions of one side or the other were correct.

In an apparent effort to ascertain the facts, the board decided to inspect, not only the premises in question, but also the existing plant of the Flower City company. After the completion of the inspection, the board voted, at an adjourned meeting, to approve the Flower City company's application but it gave no reason for its action and it said nothing about the facts disclosed by the physical inspection.

Shortly thereafter, the petitioners-appellants instituted the present proceeding. In its answer to the petition, the board gave two grounds for its decision: First, it asserted that the proposed use was a permissible one under the ordinance, without any variance or special exception, '' in view of the determination of the Board that said use is not one which is or may be injurious, noxious or offensive by reason of vibration or noise, or the emission of dust, odor, smoke, gas or fumes ''. Secondly, the board alleged in its answer that the proposed use was '' permitted in the discretion of the Board under Section 91-37, Subdivision 4, of the Building Zone Ordinance by reason of the fact that the location of said use is upon a lot adjacent to a railroad ''. This was the first mention of subdivision 4 of section 91-37 in the proceeding and the first indication that the board had under consideration the possibility of granting a special exception under that subdivision. Subdivision 4 of section 91-37 of the Zoning Ordinance authorizes the Board of Appeals, after notice and hearing, and '' subject to appropriate conditions and safeguards '' to '' Permit the location of a use permitted in any heavy industrial district, in any light industrial district on any lot adjacent to a railroad or river or adjacent to a non-conforming use. ''

In the schedule annexed to its answer, the board asserted that its "decision was based upon that evidence [the evidence taken at the hearing], together with the personal knowledge of the individual members of the Board of Appeals concerning the premises in question; information gathered from the voluminous and extensive records of the Zoning Board of Appeals, inclusive of use maps; a knowledge on the part of the said Board of conditions in said neighborhood, the changing trend of property uses, assessed valuations and many similar things of general import and not capable of being specifically enumerated."

Without going into the merits of the board's decision upon either of the two grounds given in its answer, we are of the opinion that the decision cannot be allowed to stand because of the failure of the board to comply with fundamental principles of fair procedure.

The ground first given represented the board's determination of the question of fact considered at the hearing as to whether the proposed use would be, or might be, "injurious, noxious or offensive by reason of vibration, or noise, or the emission of dust". This question of fact was decided by the board, according to its own statement, upon the basis, at least in part, of facts known to the members of the board personally. It is apparent from the meagerness of the proof at the hearing that the board must have decided the case principally upon the basis of the information it acquired upon the inspection of the existing plant of the Flower City company.

The members of a Zoning Board of Appeals are permitted to use their personal knowledge in passing upon cases coming before them but, if they do so, they must explicitly state in their return the substance of the facts outside the record upon which they rely. It is impossible for the court to perform its task of reviewing the administrative decision if it is not informed of the evidentiary facts upon which the board relied in making its decision.

"It is well-established law that a board may act upon its own knowledge of conditions and/or its own personal inspection, but the mere conclusory statement in the findings of its personal knowledge and inspection does no more than demonstrate or establish the basis for the board's arrival at the factual findings. When the board does so act, it is incumbent upon it to set forth in its return the facts known to the members, but not otherwise disclosed" (*Matter of Community Synagogue* v. *Bates*, 1 N Y 2d 445, 454). (See, also, *Matter of*

*Levy* v. *Board of Stds. & Appeals of City of N. Y.*, 267 N. Y. 347; *People ex rel. Fordham Manor Ref. Church* v. *Walsh*, 244 N. Y. 280; *Matter of Crossroads Recreation* v. *Broz*, 4 N Y 2d 39.)

The board's return in the present proceeding fails to comply with this principle. We do not know what the members of the board learned upon their inspection of the existing plant of the Flower City company as to the method of manufacture and the other incidents of the proposed use which led it to the conclusion that no injurious or offensive consequences would be caused by the proposed use. Neither do we know what facts the members of the board drew from their personal knowledge, apart from that acquired upon the inspection of the premises, in reaching their determination. The need for an explicit statement of these nonrecord facts is particularly evident in this case, because of the fact that the transcript of the hearing before the board contains no description of the general process of manufacturing cement or cinder blocks or of the particular method of operation which the Flower City company intended to use.

The so-called findings of fact attached to the answer merely repeat the same conclusory statement as that contained in the answer. There is no statement of the evidentiary facts disclosed by the inspection or drawn from the reservoir of the personal knowledge of the members of the board.

We are, of course, unable to say upon this review whether or not there was substantial evidence to support the board's conclusion since we do not know what the evidence upon which the board acted was.

The determination by the board cannot be upheld upon the alternative ground given in its answer, for a somewhat different reason. The board is vested with discretion to create a special exception with respect to the use of a " lot " adjacent to a railroad but it may exercise that discretion, under the terms of the ordinance, only " after notice and hearing " and only " subject to appropriate conditions and safeguards ". The board gave no indication prior to the interposition of its answer in this proceeding that it intended to consider the question of whether the special exception provision should be invoked in this case. The Flower City company did not ask for a special exception and the neighboring property owners were not given notice at any stage of the administrative proceeding that such an application was under consideration. It is true that the fact that the premises were adjacent to the

right of way was mentioned at the hearing by the attorney for the Flower City company in arguing that the property was suitable for its purpose and was mentioned by the attorney for the vendor of the premises as indicating that the premises were no longer suitable for residential use by his client. But there was no suggestion that the proximity of the property to the railroad had any legal bearing upon the case and there was no hint that subdivision 4 of section 91-37 of the ordinance might be invoked by the board.

It is elementary that fair procedure requires that the board advise the parties, at some time before the proceeding is closed, of the issues which it proposes to decide so that they may know what claims they have to meet and so that they may intelligently determine what evidence they ought to offer. "Specification of the issues to be determined in a quasi-judicial proceeding, appropriate to the character of the particular proceeding, is one of the basic elements of fair procedure" (Benjamin on Administrative Adjudication in the State of New York, p. 77; Davis on Administrative Law, § 80, pp. 278–283).

The objecting parties should have been given notice that the railroad exception was under consideration and they should have been given an opportunity to offer evidence bearing upon that issue. In their brief in this court, the petitioners-appellants raise the question of whether the premises in fact are adjacent to a railroad within the meaning of subdivision 4 of section 91-37. It appears from the plot plan that, while the premises adjoin the railroad right of way, they are several hundred feet from the railroad tracks themselves. There is at least a suggestion in the record that the property owned by the railroad company, lying between its tracks and the boundary line of its property, was leased to others, including the Flower City company itself, for nonrailroad use. The facts with respect to this situation would, of course, have been fully explored if the parties had been given notice that that was one of the issues in the case. Furthermore, the parties would have been entitled to present proof and to submit argument to the board as to the "appropriate conditions and safeguards" which ought to be imposed by the board, if it decided to grant a permit under the special exception, particularly in view of the supersensitive nature of the machinery upon the premises of the petitioners-appellants.

We therefore conclude that the board's decision cannot be sustained upon the present record upon either of the grounds given in the board's answer.

The order appealed from should be reversed and the determination of the Board of Zoning Appeals should be annulled and the matter remitted to the board for further proceedings in accordance with this opinion.

KIMBALL, J. (dissenting). I cannot agree with the majority that the order should be reversed, the determination of the Board of Zoning Appeals annulled and the matter remitted for further proceedings. It is my opinion that the determination of the board should be upheld and the order affirmed. There was presented to the superintendent of buildings, and later to the appeal board, the simple application for a permit to demolish an existing dwelling and to erect two masonry buildings " to be used for office, warehouse and storage and the manufacture of cement blocks, cinder blocks and accessories." The applicant for the permit did not seek a variance or a special exception. The building superintendent denied the application on the ground that the proposed " use " did not meet " the requirements of the building zone ordinance." The Board of Zoning Appeals, however, after a hearing, found that the ordinance did not prohibit such use. The matter brought out at the hearing, statements of counsel and observations by the board in reference to a " variance " and " special exception " are entirely irrelevant and should be disregarded as surplusage. The sole question for the Board of Appeals to determine and the only question upon which such board was called upon to pass was whether the proposed " use " was violative of the ordinance restrictions. The appeal of the applicant merely brought up for review the action of the building superintendent and nothing else. Had there been application for a variance or special treatment, such application would not have been an appeal from the decision of the building superintendent but a direct application to the Board of Zoning Appeals in the first instance, pursuant to statute and the ordinance. So, as I see it, on the appeal to this court, we may only determine whether there was substantial evidence to sustain the findings of the board.

I wholly agree with the majority that if the proposed use was one prohibited by the provisions of the ordinance, it was pursuant to subdivision 32 of section 91-22 of the ordinance. There was no discretion in the Board of Appeals as to granting or refusing the permit, provided the proposed use was not within said subdivision 32. In other words, was the proposed use one embraced within: " Any trade, industry or use which is or may be injurious, noxious or offensive by reason of

vibration, or noise, or the emission of dust, odor, smoke, gas or fumes''?

It is not presently necessary to pass upon the question as to whether, on an application to the Board of Appeals by way of appeal from a denial of a building permit, a hearing is required. The fact is that there was a hearing on notice to all interested parties. The record speaks for itself as to what the objections were and there is no dispute as to the right of the Board of Appeals to use, in addition to other proof, its knowledge independently acquired.

As I view it, the question presented is whether on this appeal to the board for a building permit, as distinguished from an application in the first instance for a variance or special treatment, the findings have support in the record. The gist of the ''findings of fact'' was: ''That the use, by said Flower City Builders Supply Corp., of said premises for office, warehouse, storage, and the manufacture of cement blocks, cinder blocks and accessories, is not one which is or may be injurious, noxious or offensive by reason of vibration or noise, or the emission of dust, odor, smoke, gas or fumes.'' The board found that the use proposed was not within the prohibition of subdivision 32. What more could the board say unless it stated the facts in other words, i.e., that the manufacture of cement and cinder blocks did not and would not cause vibration or noise or the emission of dust, odor, smoke, gas or fumes? It is my opinion that this finding was amply sustained by the proof taken at the hearing, supplemented by the common knowledge and experience of members of the board. It is significant that upon this appeal, appellants merely argue that cement block manufacturing is a prohibited use. As to subdivision 32 of the section, they merely say that their counsel explained that ''the heavy trucks would rumble so near to the precision tools and machines that the vibration and dust would ruin their business.'' The appellants on this appeal do not even claim that the *manufacture* of the blocks would cause dust and vibration; only that trucks passing would do so. Of course, there is nothing in the ordinance referring to the use of trucks.

Let us look to what was brought out at the hearing before the board. The attorney for the appellants stated his clients' objection: ''The opposition is not so much against the plant itself, but the weight of heavy trucks going by the front door will put the tools completely out of kilter''. He made no claim of dust or vibration arising from the use of the premises in making the blocks. It was stated by the representative of the

Supply Corp. that "in the course of our operation there is no dust. * * * No soft coal will be used. It will be a modern plant and we will use either oil or gas." Then the attorney for the appellants again referred to vibration saying: "there is not 3 ft. between the road and the front of our plant and those heavy trucks are bound to make a vibration." Again no claim was made that the proposed *use of the premises* would cause vibration. Appellants' attorney asked the Supply Corp. representative about "dust control and where they will store their cement." The answer was: "All within the plant. Nothing outside whatsoever."

The objectors made no proof, and, in effect, no claim that the proposed use would be in violation of subdivision 32. What proof was made was to the contrary. The real objection was to anticipated vibration of trucks passing upon the road where appellants' plant is located. Even if such were shown to be a fact, it would be no ground for refusing the permit.

The order should be affirmed.

All concur, except KIMBALL and GOLDMAN, JJ., who dissent and vote for affirmance in an opinion by KIMBALL, J., in which GOLDMAN, J., concurs.

Present — McCURN, P. J., KIMBALL, WILLIAMS, GOLDMAN and HALPERN, JJ.

Order reversed, without costs of this appeal to any party and determination of the Board of Zoning Appeals annulled and matter remitted to the Board of Zoning Appeals for further proceedings in accordance with the opinion by HALPERN, J.