REIZEL, INC., et al., Respondents, v. EXXON CORPORATION, Appellant, et al., Defendants.

EXXON CORPORATION, Appellant, v. TOWN BOARD OF THE TOWN OF OYSTER BAY, Respondent.

Second Department, November 5, 1973.

*Pratt, Caemmerer & Cleary* (*George C. Pratt, Samuel S. Tripp* and *Richard P. Broder* of counsel), for appellant.

*Stern, Gillies & Kurtzberg, P. C.* (*Joseph Stern* of counsel), for Reizel, Inc. and another, respondents.

*John M. Conroy, Town Attorney* (*Charles F. Lynch* of counsel), for Town Board of the Town of Oyster Bay, respondent.

GULOTTA, J. These companion appeals deal with two separate cases — a proceeding under article 78 of the CPLR and an action for a declaratory judgment.

The article 78 proceeding was instituted by Exxon Corporation, the holder of a special use permit to build and maintain a gasoline service station, against the Town Board of the Town of Oyster Bay. It sought to annul a determination of the board which had denied Exxon's application for an extension of time to utilize the special use permit. The Special Term denied the relief sought on the ground that the issuance of the permit was "invalid *ab initio*."

The action for a declaratory judgment was brought by Reizel, Inc. and Monchatea Nursery School and Kindergarten, Inc. against a corporation for whom Exxon Corporation has been substituted and also against the Town of Oyster Bay and one Edward Gaynor, the executive officer of the town's Building Department. It seeks (1) a declaration that the original special use permit, which was granted by the town on February 16, 1971, is invalid and (2) an injunction restraining the town and Gaynor from issuing any new permit for the erection of a gasoline service station. A motion in this action by Exxon's predecessor to

dismiss the complaint on the ground of the Statute of Limitations was denied by the Special Term.

It is from these two adverse rulings that Exxon appeals. Since both appeals involve interrelated questions, they will be considered together.

The property involved in this controversy is part of a two-acre plot in Farmingdale, Town of Oyster Bay, Nassau County, originally owned by one Joseph Angelone and zoned "Business F". It is located on the northeast corner of Merritt Road and Motor Avenue, with a frontage of almost 200 feet (actually 199.92 feet) on Merritt Road and 471 feet along the northerly side of Motor Avenue.

Reizel owns the contiguous parcel immediately to the north and fronting on Merritt Road. It has leased this property to Monchatea, which operates a summer day camp and nursery school at the premises.

In March, 1969 Angelone made a dual application to the Town Board — first, for a change of zone from Business F to Business G (the only classification which permits a gasoline service station) of the area along the entire frontage on Merritt Road and extending easterly a distance of 150 feet along Motor Avenue; and, secondly, for a special permit to erect and maintain a gasoline filling station on the southerly part of said premises extending along Merritt Road for a distance of 150 feet from the northerly side of Motor Avenue, leaving a 50-foot buffer zone between the service station and the nursery school, on which Angelone intended to erect two one-story stores. This latter feature was not necessarily part of the application, although mentioned, since the stores were and are a permitted use as a matter of right in both the Business F and Business G zones.

The public notice provisions of law were complied with, setting forth the parcel for which the change of zone from Business F to Business G was desired and also that a special use permit to operate a gasoline service station on the southerly 150 feet was to be considered. At the public hearing, which took place in December, 1969, one Jack Zeldin, the president of both Reizel and Monchatea, appeared on their behalf. He objected to the entire application and more particularly claimed that to grant the special permit would violate section 104 of the town's Zoning Ordinance, which prohibits a gasoline station within 200 feet of a "public school". Various alternative treatments for the buffer zone were discussed at the hearing, including the applicant's willingness to surrender his right to build stores. This he

agreed to do. However, no decision was reached by the Town Board at that time.

On February 16, 1971 the board granted both applications for the full 200 feet on Merritt Road (instead of the 150 feet originally requested by the applicant and set forth in the public notices), but with some very significant limitations. The applicant was required to and did file restrictive covenants in the County Clerk's office limiting the service station to doing only minor repairs, proscribing the outdoor storage of vehicles and parts and prohibiting the sale or rental of vehicles, as well as several other restrictions. He was also required to forego the construction of the stores and in their place to substitute a 20-foot landscaped area planted so as to constitute an effective screen with a traprock base free of weeds, the remaining 30 feet to be kept as open space around the gasoline station. A second declaration was required and filed to limit the remainder of Angelone's business-zoned land to one-family dwellings. A public notice of this change of zone was published on February 25, 1971.

Exxon's predecessor took title to the gasoline station property on May 10, 1971, three months after the adoption of the resolution by the Town Board and well after the 30-day time limit (Town Law, § 267, subd. 7) for reviewing the determination in an article 78 proceeding.

In April, 1972 Reizel and Monchatea brought the present suit to declare the granting of the special use permit void. Since the suit was pending, Exxon quite properly deferred construction of the gasoline station. However, since the permit was good for only one year (see Building Zone Ordinance of the Town of Oyster Bay, § 41), Exxon applied for and was granted two six-month extensions, bringing the permit up to February 17, 1973. The suit was still pending on December 20, 1972 when Exxon applied for a third six-month extension. This was denied by the Town Board without opinion and the article 78 proceeding was instituted to attack that determination.

In sustaining the action of the board and dismissing the article 78 proceeding, the Special Term acknowledged that under the principles enunciated in *Matter of Lefrak Forest Hills Corp.* v. *Galvin* (40 A D 2d 211, affd. 32 N Y 2d 796) the substantial change in position by Exxon in reliance on the permit would have entitled it to the extension it sought. It is undisputed that over $200,000 was invested in the purchase price, preparation of plans, demolition work, installation of underground tanks, etc., by Exxon. However, the Special Term felt that no vested rights

had been gained and that the permit was invalid because of what the Special Term conceived to be a substantial deviation between the notice of hearing as published and the special permit which resulted therefrom. Reizel and Monchatea also rely on this argument in their declaratory judgment action.

We believe this to be an oversimplification of the applicable law as set forth in *Albini* v. *Stanco* (61 Misc 2d 813, affd. 32 A D 2d 1042). The object of the notice is to fairly apprise the average interested citizen who may read it of the general purpose of the hearing. It is not judged merely by a quantitative test such as was applied by the Special Term, but rather it is a question of whether the notice was misleading or deceptive. That was hardly the situation in this case where the objectants who are now the plaintiffs in the declaratory judgment action appeared at the hearing and stated their views in full and where the eventual decision reflected those views in part by taking away the right of the applicant to use stores as a buffer and substituted therefor the plantings and open space. For this reason also, the conclusion of the Special Term that the applicant got $33\frac{1}{3}\%$ more than it had asked for is incorrect. There is no simple way to express this difference in mathematical terms. In one aspect the applicant got more and in another less. Thus, we are not dealing with a case where the Town Board granted a permit for more than was requested through inadvertent error based on confusion on its part between the dimensions covered by the rezoning application and the dimensions covered by the special use permit application. Rather we have a compromise decision between the positions of the contending parties, representing the " give and take " which properly takes place as the result of such public hearings in effecting a resolution of the problem. This is the very purpose for which a hearing is held; and a new notice and a new hearing would be needed only when it could be fairly said that the deviation was such that interested persons would not have been alerted to the possibility by the original notice.

A second point relied upon as a jurisdictional defect to sustain the decision in the declaratory judgment action, and thus avoid the 30-day time limit for a plenary article 78 review, is that of the status of Monchatea as a " public school ". Aside from the practical construction necessarily put on the ordinance by the Town Board itself (when it granted the original application) that Monchatea is not a public school, common sense would dictate that the board intended by this language to exclude a private school, which Monchatea indubitably is, from the auto-

matic operation of the ordinance, even though it might be a factor on a discretionary basis. (See the definition given in Webster's Third New International Dictionary [unabridged]: "public school * * * 2a: a tax-supported school controlled by a local governmental authority; *specif*: an elementary or secondary school in the U. S. providing free education for the children of residents of a specified area; b: the building housing a public school.") (See, also, *Matter of Isquith* v. *Levitt,* 285 App. Div. 833, affg. 137 N. Y. S. 2d 493, where the term "public school" was held to equate to an establishment maintained by a board of education as part of the public school system.)

Further, in an early case, *Matter of Townsend* (195 N. Y. 214), where the question came up in a context similar to ours, the Court of Appeals, in a case of first impression, dealt with the more sweeping term "schoolhouse" and held that it did not apply to a registered training school for nurses within the meaning of a statute which forbade trafficking in liquor within 200 feet of a "schoolhouse".

So the question of what is meant by the words "public school" need detain us no longer.

As to the other so-called jurisdictional defects relied upon by the plaintiffs, chief of which is the time lapse of 14 months between the hearing and the decision and the change in composition of the Town Board in the interim, it may be noted that the record shows that a majority of the original board who heard the application subsequently voted to grant it and that, in any event, the plaintiffs' own further delay of 14 months in bringing this suit, while it sat back and observed a building demolished, storage tanks installed, etc., precludes them from maintaining it, on the ground of laches as a matter of law. The applicable principle has been expressed as follows: "The real purport, if not the fair equivalent, of the maxim that equity aids the vigilant, not the dilatory, suitor, is that he who, having knowledge of rights which he may assert, has failed to act, with the result that another has acted upon the assumption that such rights do not exist or are not to be asserted, is estopped to assert them" (20 N. Y. Jur., Equity, § 101).

Also to the point is the statement culled from the First Department opinion in *Greenfield* v. *Denner* (6 A D 2d 263, 268, revd. on other grounds 6 N Y 2d 867): "In equity the answer is more simple as to when the defense of laches may lie. Equity will deny its discretionary relief — but only its discretionary relief — when plaintiff has rested on his rights, done nothing, while to his knowledge, defendants changed their position to their irre-

versible detriment (*Groesbeck* v. *Morgan*, 206 N. Y. 385, 389; *Calhoun* v. *Millard*, 121 N. Y. 69, 82–83).''

We are further of the opinion that, were this not so, the plaintiffs would be precluded on the facts of this case from circumventing the time limitations for themselves to institute an article 78 proceeding where a complete plenary review of the very issues raised in the declaratory judgment action would have been available (*Colodney* v. *New York Coffee & Sugar Exch.*, 4 A D 2d 137, affd. 4 N Y 2d 698; *Tarrant* v. *Incorporated Vil. of Roslyn*, 10 A D 2d 37, affd. 8 N Y 2d 1129).

This is not to say that a zoning decision may never be attacked on jurisdictional grounds. The challenge would be good, for example, where no notice is given or the notice given is so deceptive that reasonable persons were duped into not appearing. Obviously that is not the case here, where the plaintiffs were the principal protagonists at the hearing.

The judgment in the article 78 proceeding should be reversed, on the law, with costs, and the determination of the Town Board should be annulled, the special permit reinstated and the Town Board directed to issue an extension of the permit for six months beginning from the date of entry of the order to be made hereon.

In the declaratory judgment action, the order should be reversed, on the law, with costs, the motion to dismiss the complaint (now nominally as to defendant Exxon) granted and the special use permit granted to Angelone on February 16, 1971 declared valid.

HOPKINS, Acting P. J., LATHAM, SHAPIRO and BENJAMIN, JJ., concur.

Order reversed, on the law, with costs, motion to dismiss the complaint (now nominally as to defendant Exxon Corporation) granted and the special use permit granted on February 16, 1971 to Joseph Angelone, Exxon's grantor, is declared valid.

Judgment reversed, on the law, with costs, determination of the Town Board of the Town of Oyster Bay annulled, special permit reinstated and said Town Board is directed to issue an extension of the permit for six months beginning from the date of entry of the order to be made hereon.