█     In the Matter of WILLIAM ARAGER et al., Appellants, v MORTON SUMMER et al., Constituting the Ramapo Zoning Board of Appeals, et al., Respondents.—In a proceeding pursuant to CPLR article 78, *inter alia,* to review a determination of the respondent zoning board of appeals which, *inter alia,* granted respondent Frederick's application for a variance, petitioners appeal from a judgment of the Supreme Court, Rockland County, entered August 8, 1977, which confirmed the determination and dismissed the petition. Judgment affirmed, without costs or disbursements. The determination of the board is supported by substantial evidence in the record and was not made in violation of lawful procedures (cf. *Matter of Cowan v Kern,* 41 NY2d 591, 599). Titone, J. P., O'Connor and Rabin, JJ., concur.

Lazer, J., dissents and votes to reverse the judgment, grant the petition and annul the determination, with the following memorandum, in which Suozzi, J., concurs: I do not agree with the majority that the determination of the zoning board of appeals was supported by substantial evidence or that it "was not made in violation of lawful procedures". If the board's grant is an exercise of original jurisdiction to declare the existence of a legal nonconforming use, it must fall because there has been no showing that the board was delegated such jurisdiction; if the grant is a variance, it must fall for lack of proof; if the grant is an exercise of appellate jurisdiction to review an order of the building inspector, it must fall because of the lack of public notice and untimeliness. The respondent James E. Frederick, as executor, owns a 7.7-acre parcel of land in the Town of Ramapo which has apparently been the subject of commercial uses since the early 1900's although it presently lies in a residential use district. At a hearing before the board, Frederick described the current use as "a general wholesale and retail distribution center with storage facilities". There are 11 structures on the property, some of frame construction and others of concrete or cinder block. One structure, used as a garage, is made of reinforced concrete and is 65 feet high. Housed in these various structures are, *inter alia,* a garden supply center, a concern which sells and stores coal, another which sells household products, a beverage and soda business, and numerous garages and other storage facilities, including facilities for storing gasoline, kerosene and propane gas. On May 30, 1975 the Ramapo building inspector mailed Frederick an order to "cease and desist all present operations of this parcel * * * within the next fifteen (15) days" upon the ground that "the present use of the above property is illegal." On July 9, 1975 the building inspector "posted" the property. On July 25, 1975 Frederick executed an application to the board indicating on the form that he sought a "Variance from the requirement of Section 4624.C [46-24C]" of the Ramapo zoning ordinance, which provides: "Cessation of use. If active and continuous operations are not carried on in a nonconforming use during a continuous period of one (1) year, the building or land where such nonconforming use previously existed shall thereafter be occupied and used only for a conforming use. Intent to resume active operations shall not affect the foregoing." Since the building inspector construed section 46-24C as eliminating Frederick's right to use the land for anything other than residential purposes, any variance from the terms of the section must necessarily be based upon hardship principles (see *Matter of Otto v Steinhilber,* 282 NY 71). Frederick's written submission upon which the zoning board hearing was held also indicated that he was seeking "Certification of an existing non-conforming structure or use"

to "permit maintenance and use of buildings, structures and non-building uses as lawful non-conforming uses in existence prior to the effective date of the ordinance", language which might be read to invoke either the board's appellate jurisdiction to reverse the building inspector or the exercise of original jurisdiction on its part to declare the status of the uses on the property. The date (or dates) of Frederick's submission are significant because section 46-27B of the zoning ordinance contains a provision limiting the time within which review of an order of the building inspector may be sought: "No appeal to the Board of Appeals, or request for review, from any order, requirement, decision or determination of the Building inspector, shall be filed later than thirty (30) days from the date of filing of the order, requirement, decision or determination in the office of the Building Inspector. No appeal taken to the Board of Appeals after any time limitation set in this ordinance shall be valid." Although Frederick claims to have submitted his application on July 25, 1975 (16 days after the building inspector posted the property), the copy in the record is stamped "Received Sep 12, 1975", well beyond the 30 days within which to seek review of the building inspector's determination. Frederick alleges that after his purported July 25 submission he was notified that certain "addendums to the engineer's maps * * * were required" and that "On September 12, 1975 the revised maps were completed and immediately forwarded to the Board for formal filing." However, according to a statement made by Frederick's attorney at the hearing, Frederick, by letter dated November 21, 1975, amended his application to include as its purpose an appeal from the order of the building inspector. Meanwhile, on September 19, 1975, the board submitted Frederick's application to the county planning board pursuant to sections 239-*l* and 239-m of the General Municipal Law, inserting a question mark next to the notation that the "proposed action" was for a variance. The county planning board considered the application as one for a use variance and, on October 10, 1975, disapproved it. The zoning board then set the application down for a hearing and published a notice of hearing which, in pertinent part, read: "Application of James E. Frederick, Executor; 2 Caprel Lane, New City, New York, *for a variance of Section 46-24C of the Ramapo Zoning Ordinance* to permit the maintenance and use of buildings, structures and non-building uses as lawful non-conforming uses in existence prior to the effective date of the Zoning Ordinance." (Emphasis supplied.) Since Frederick had not amended his application to include a review of the building inspector's order at the time the notice was published, the notice did not contain that information. And, unaccountably, the notice omitted any reference to the fact that the application also sought "Certification of an existing non-conforming structure or use". As published, the notice refers to a variance application and nothing else. The petitioners, who are neighboring residential property owners, participated in the hearing which was held on December 4, 1975. The zoning board apparently announced its decision to grant a variance at a subsequent meeting held on April 8, 1976, but in an ensuing judicial review proceeding, Special Term remitted the matter to enable the board to state its reasons for granting a variance contrary to the recommendations of the county planning board as required by section 239-m of the General Municipal Law. Thereafter, the board filed documents dated December 9, 1976 purporting to be minutes of the public meetings held on December 4, 1975 and April 8, 1976. Although the minutes state that the application was for a variance of section 46-24C to permit continued use of the property as a nonconforming use, the board made a "finding" that the application was for "an extension of a non-conforming use since the present

uses are similar and many are continuations of actual uses existing at [the] time the parcel became non-conforming." The minutes also reflect the board's determination that the legal advertisement was "correct" and that the submission of the application was timely. The application was granted upon certain conditions not pertinent here. The petitioners then brought the instant CPLR article 78 proceeding asserting, inter alia, that the board lacked jurisdiction to make the determination because the public notice was defective, the application was untimely, and there was no evidence to support the grant of a variance. Special Term dismissed the petition. Nothing in the record indicates that the zoning board was possessed of original jurisdiction to make a quasi-judicial determination that a use was legally nonconforming (see Town Law, § 276, subd 2; 3 Rathkopf, Law of Zoning and Planning [4th ed], 50-5; Foss v Town of Oyster Bay, 146 NYS2d 582), although, if properly delegated, it could have had such jurisdiction (see Matter of Joynt v King, 6 AD2d 234). Nevertheless, the board did have the power to entertain Frederick's application for "Certification of an existing non-conforming structure or use" in connection with an application for a variance—or, if the application had been timely made and proper notice given, to review the building inspector's order. There was insufficient evidence of hardship before the zoning board to support the grant of a use variance (see Matter of Forrest v Evershed, 7 NY2d 256; Matter of Otto v Steinhilber, 282 NY 71, supra). Frederick testified that in order to sell the property for residential or other conforming purposes it would be necessary to demolish, at a prohibitive cost, the 65-foot high structure on the property. He did not, however, state what that cost would be. He testified that he was unable to sell the property, but he did not state what efforts he made in that direction. Finally, he declared that if he could not rent the existing buildings he would be unable to pay the $12,000 cost of maintaining the property. The record is barren of dollars-and-cents proof showing that the property could not yield a reasonable return if used in a manner permitted by the ordinance (see Matter of Crossroads Recreation v Broz, 4 NY2d 39). But if the zoning board's determination be deemed a review of the building inspector's order, it still may not stand. In the first place, a board of appeals is without jurisdiction to rule on an issue which has not been included in a public notice (Matter of Carlington Corp. v Siegel, 61 AD2d 813; Matter of Buffalo Cremation Co. v March, 222 App Div 447, affd 249 NY 531; Matter of Wehr v Crowley, 6 AD2d 214; Matter of Deile v Boettger, 250 App Div 633). The public notice here did not indicate that review of the building inspector's order was the purpose of the hearing, nor did it suggest that the board would determine whether the present uses had existed uninterruptedly on the property since prior to the present zoning. Instead, the notice referred to a variance to permit the property to be used for nonconforming purposes which had existed prior to the effective date of the zoning ordinance. Reizel, Inc. v Exxon Corp. (42 AD2d 500, affd 36 NY2d 888), cited by Frederick, is distinguishable since the notice there under attack stated that the application was for a special permit, which was granted, and the issue was the quantitative deviation between what was asked for and what was granted. If the instant notice is construed as merely ambiguous, it still cannot survive because any ambiguity should be resolved against the notice (see Matter of Palmer v Mann, 206 App Div 484). The fact that the petitioners appeared at the December 4 hearing and testified does not change the result (see Matter of Retoske v Boettger, 249 App Div 624). It is apparent that the untimeliness of Frederick's application for review of the building inspector's order contributed to the misleading nature of the notice.

Although the time period for filing an application for review may be measured from the date of an informal submission (see *Matter of Highway Displays v Zoning Bd. of Appeals of Town of Wappinger,* 32 AD2d 668), here no application for review (not even an informal one) was made until November 21, 1975 according to the statement of Frederick's counsel. A rule designating a period after which the determination of an administrative officer is no longer subject to review is not designed solely for the benefit of the reviewing body. Where a permit has been denied by a building inspector, the rule gives those opposing its grant assurance that the applicant no longer has a right to secure review of the denial and that vigilance on the part of the objectors no longer need be maintained (3 Rathkopf, Law of Zoning and Planning [4th ed], 63-9). Although in some jurisdictions such rules are deemed jurisdictional (see, e.g., *Nolfi v Zoning Bd. of Review of Town of Cumberland,* 91 RI 444; *Greeley v Zoning Bd. of Appeals of Framingham,* 350 Mass 549), Frederick cites New York authority to the effect that such rules must be construed reasonably so as not to deprive a citizen of his rights. However, the cases cited involve appeals of a *grant* of a permit sought by persons other than the permittee and the courts calculated the time period from the time when those persons had notice of the building inspector's actions (see *Matter of Pansa v Damiano,* 14 NY2d 356; *Matter of Cave v Zoning Bd. of Appeals of Vil. of Fredonia,* 49 AD2d 228; *Highway Displays v Zoning Bd. of Appeals of Town of Wappinger, supra*). The situation of an applicant who had been *denied* a permit is distinguishable (see *Matter of Pansa v Damiano, supra*). Here, the petitioners did not waive the noncompliance since they raised the objection at the public hearing (cf. *West Side Mtge. Co. of N. Y. v Leo,* 174 NY Supp 451) and Frederick has alleged no circumstances which would make it unfair to give effect to the ordinance in this case. Quite to the contrary, his noncompliance together with the deceptive notice impel the conclusion that the entire procedure deprived the petitioners of their rights to such an extent that the board must be deemed to have lacked jurisdiction to hear the appeal. Therefore, I would reverse the judgment and annul the zoning board's determination.