■ In the Matter of JENNIFER S. SUTTON, Also Known as JENNIFER L. SMITH, et al., Appellants, v BOARD OF TRUSTEES OF THE VILLAGE OF ENDICOTT et al., Respondents.—Kane, J. P. Appeal from that part of a judgment of the Supreme Court at Special Term (Ellison, J.), entered January 2, 1986 in Broome County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to invalidate certain resolutions and laws passed by respondent Board of Trustees of the Village of Endicott.

Ideal Hospital, which is located in the Village of Endicott, Broome County, was built in 1927 and was owned and operated by the village until 1981. In 1981, the ownership and operation of the hospital was transferred to Charles S. Wilson Memorial Hospital, now respondent United Health Services, Inc. (UHS), which operated the hospital until 1984 when it became a "Medicenter", a walk-in outpatient clinic.

In May 1985, UHS requested the village to rezone the property on which the hospital was located and several adjoining parcels from an R-1 designation to an R-3-B designation. Such rezoning was a necessary prerequisite for the construc-

tion of a new skilled nursing facility and conversion of the hospital to apartments for the elderly. UHS described the proposed project as follows:

"The project is to be developed in two phases. The first phase includes the construction of a 150-bed skilled nursing facility on the east side of Ideal Hospital. Also included in this phase is the conversion of Ideal Hospital to 91 senior citizen apartments. The Ideal Hospital nurses residence will be converted to administrative offices, teaching and research space for medical education and private physicians offices. All of the parking required in the first phase can be accommodated on property which is currently owned by UHS * * *.

"In the second phase, which is expected to occur in 1995, an additional 100 units of senior citizen housing would be developed, along with 50 additional nursing home beds. To complete the second phase UHS will have to purchase 3 properties adjacent to the site for parking. UHS has contacted the owners of these properties but has no plans in the first phase of the project to purchase any land".

In a supplemental request, UHS asked that High Avenue in the Village be closed and that the R-3-B district be amended to allow for the construction of a skilled nursing facility. After public hearings were held, respondent Board of Trustees of the Village (Board), on August 22, 1985, granted UHS' request and rezoned the parcels to R-3-B, and amended the R-3-B designation to allow for the construction of the skilled care facility. The proposal to close High Avenue, however, was defeated. Prior to this meeting, and subsequent to reviewing an environmental assessment form (EAF), the Board, as lead agency, determined that the proposed rezoning would have no significant environmental impact. The effect of the negative declaration was to determine that no environmental impact statement (EIS) was needed. Several local homeowners then commenced this CPLR article 78 proceeding to invalidate the zoning change. Specifically, petitioners alleged, inter alia, that the Board erroneously issued the negative declaration and failed to give adequate notice to the public of the hearing to consider the zoning change. Special Term converted that portion of the petition challenging the sufficiency of the notice of public hearing to a declaratory judgment action and granted summary judgment to respondents. Turning to the merits of the article 78 proceeding, Special Term found that the EAF was flawed insofar as it failed to consider the effects of phase two of UHS' proposal in evaluating the over-all environmental impact as it relates to the three privately

owned parcels. The court, noting that a hospital or "Medicenter" had existed on UHS' property for over 50 years, concluded that the EAF was adequate with respect to that parcel. Accordingly, Special Term invalidated the rezoning of the three privately owned parcels and upheld the rezoning of UHS' property. This appeal by petitioners ensued.

Preliminarily, we agree with Special Term's finding that since petitioners had actual notice of the scope of UHS' proposal, they were not aggrieved by any deficiency in a published notice of public hearing. Moreover, a review of the record reveals that the notice given, although containing a minor error, was adequate (see, Reizel, Inc. v Exxon Corp., 42 AD2d 500, 504, affd 36 NY2d 888).

Turning to the merits, we find that petitioners have failed to demonstrate that the Board erred by not categorizing this action as a "Type 1" action (see, 6 NYCRR 617.12). A review of the record fails to support petitioners' contention that the property in question is "substantially contiguous" to a public recreational area (see, 6 NYCRR 617.12 [b] [10]).

Next, we agree with Special Term's finding that the Board should have considered the effects of phase two of UHS' proposal in evaluating the over-all environmental effects of the proposed rezoning. In this regard, 6 NYCRR 617.11 (b) provides that: "For the purpose of determining whether an action will * * * [have a significant effect on the environment], the action shall be deemed to include other simultaneous or subsequent actions which are: (1) included in any long-range plan of which the action under consideration is a part; (2) likely to be undertaken as a result thereof; or (3) dependent thereon." (See also, ECL 8-0109 [4]; Matter of Kirk-Astor Dr. Neighborhood Assn. v Town Bd., 106 AD2d 868.) According to UHS' own papers, phase two of its proposal was part of a formulated long-range plan. Consequently, phase two should have been considered by the Board before issuing its declaration of no significant environmental impact (see, 6 NYCRR 617.11 [b], [c]). We are unable to agree with Special term that the failure to consider phase two of the proposal only affected the finding of nonsignificance with respect to the parcels not owned by UHS. Indeed, except for parking areas, all phase two construction will be built on the property owned by UHS.

Respondents contend that this issue is moot, since phase two of UHS' proposal is contingent upon the rezoning of the three privately owned parcels. However, contrary to respondents' suggestion, Special Term's decision does not provide that the

parcels could never be rezoned, or even that an EIS would be necessary before the property could be rezoned. Presumably, another EAF could be prepared with regard to those three parcels, the village could issue another negative declaration if the EAF showed no environmental significance, and the village could then rezone the properties. In such event, UHS would again be able to develop phase two of its proposal and the development could escape the requisite review *(see, Matter of Kirk-Astor Dr. Neighborhood Assn. v Town Bd., supra,* p 869; *see also, Matter of Tri-County Taxpayers Assn. v Town Bd.,* 55 NY2d 41, 46-47).

The petition should therefore be granted and the matter remitted to the Board for further consideration not inconsistent with our decision herein. Although we direct the Board to consider the long-range impact of the proposed project, we make no finding as to whether such consideration would alter the declaration of nonsignificance.

Judgment modified, on the law, with costs to petitioners, by reversing so much thereof as partially dismissed the petition; petition granted and matter remitted to respondent Board of Trustees of the Village of Endicott for further proceedings not inconsistent herewith; and, as so modified, affirmed. Kane, J. P., Main, Weiss, Mikoll and Yesawich, Jr., JJ., concur.