In the Matter of C. DE MASCO SCRAP IRON & METAL CORP., Respondent, v HERBERT ZIRK, as Chief Building Inspector of the Town of Babylon, et al., Appellants.

Second Department, April 24, 1978

### APPEARANCES OF COUNSEL

*Joseph F. Klein, Town Attorney (Wallace H. Boyle* of counsel), for appellants.

*Blumberg, FitzGibbons & Blumberg (Edgar Hills* of counsel), for respondent.

**OPINION OF THE COURT**

HAWKINS, J.

The respondents in this proceeding appeal from a judgment of the Supreme Court, Suffolk County, dated September 16, 1977, which directed the Chief Building Inspector of the Town of Babylon to issue a building permit to the petitioner and, also, enjoined the Babylon Planning Board and Town Board from taking any action which would interfere with the issuance of the building permit to the petitioner.

The judgment should be affirmed, without costs or disbursements.

Petitioner has been operating a scrap metal and vehicle junkyard business at its present location for some five years. The subject property is zoned as "Industrial H"—"Heavy Industry District." In 1976 petitioner applied for a permit to construct a foundation and building so that it could install and operate an automobile shredder. That is a huge machine requiring a massive foundation which reduces junked automobiles to small pieces of scrap metal. By letter dated August 26, 1976 the Building Inspector informed petitioner that the use sought was not within the specific uses enumerated in the Town of Babylon's zoning ordinance. Actually, section 15-264 of the ordinance schedules some 27 industrial manufacturing processes requiring special use permits. The use of an automobile shredder concededly is not expressly listed.

Following the denial of its application for a building permit, rather than instituting an article 78 proceeding, petitioner applied to the zoning board of appeals for a special use permit so that it could proceed to erect this special apparatus.

The chronology of events which subsequently transpired is germane. A public hearing was held after the requisite notice and publication. In its application for the permit, petitioner stated that the approximate value of the contemplated improvement was $5,000. In actuality, the expenditure would be some $300,000. At the hearing there was testimony concerning the operation of an automobile shredder, petitioner's need for such machinery and the effect it would have upon the character of the neighborhood. Testimony was further offered as to the following:

1. That the area involved herein was designated as a heavy industrial district in accordance with the zoning map of the Town of Babylon.

2. That the petitioner had been in the motor vehicle junk business for 25 years across the street from the premises and five years at its present location.

3. That the property upon which the petitioner is conducting its business is more than two acres in size and is surrounded by other heavy and light industry.

4. In affidavits of duly qualified engineers and an architect, it was stated that the noise level generated by the shredder would not appreciably increase the noise level presently generated at this site.

5. That the introduction and use of the automobile shredder at the petitioner's plant would create additional employment for residents of the town.

The layout of the proposed foundation and the site plans, as prepared by a licensed architect, were offered as exhibits.

Significantly, the town board offered no opposition at the public hearing to granting the special permit. On October 28, 1976 the board of appeals granted the application, but provided that its approval would be null and void unless the use was commenced within 180 days of granting the certificate of approval. No judicial review of that decision was sought.

Thereafter, petitioner applied to the Building Inspector for a permit. The Building Inspector submitted the plans to the planning board. On January 12, 1977 the planning board noted that the site plans were inadequate for review since they were at variance with those submitted to the board of appeals. On January 28, 1977 the petitioner was advised by the planning board of the need for revised site plans and that further information was required as to parking, highway grading and the use of undeveloped areas. The board also advised that it had to satisfy the Suffolk County Department of Environmental Control. On January 31, 1977 petitioner received a letter from the latter agency in which it advised petitioner to hire an engineer to consult with its engineers.

On April 8, 1977 petitioner received an extension from a unanimous zoning board of appeals for an additional 180-day period which would expire on October 4, 1977. On April 15, 1977 the Department of Environmental Control advised the Building Inspector that it had reviewed the plans and specifications of the petitioner and that it was "satisfied with air and water pollution control for this project and recommends that the Town look further into the noise and vibration aspects."

The revised plans were submitted on May 16, 1977. The planning board, on May 17, 1977, requested the petitioner to furnish engineering studies and reports of the noise and vibration which the facility might cause. These were furnished to the planning board about eight days later. They established that operation of the shredder would cause no appreciable vibration. The planning board, nevertheless, determined that these reports were inconclusive and requested that the town board retain an engineer to conduct its own studies. On June 23, 1977 the planning board informed petitioner's attorney that it was awaiting a decision from the town board.

On July 7, 1977 the petitioner's attorney obtained a memorandum from the Town Attorney to the planning board in which the Town Attorney advised that he had "no knowledge of any reason why a Building Permit could not be issued at this point." However, on July 15, 1977 the Town Supervisor instructed the Town Attorney to prepare a resolution to the effect that the shredder represented a serious hazard to the health, welfare and safety of the area residents and, consequently, was "an impermissible use of the property." On July 19, 1977 the planning board advised petitioner's attorney that it had adopted a resolution incorporating verbatim the supervisor's language. This proceeding was then commenced.

The town board also instituted an article 78 proceeding. It challenged the board of appeals' grant of the special use permit and the subsequent renewal thereof.

During the pendency of the article 78 proceedings, the town board held a public hearing, upon notice, and adopted a resolution changing the zoning of petitioner's property so that automobile shredding would be an impermissible use. Petitioner has instituted a declaratory judgment action challenging the validity of the rezoning.

Special Term (DE LUCA, J.), on September 8, 1977, dismissed the town board's article 78 proceeding, holding that the permit to build the automobile shredder was available to petitioner as a matter of right under the Babylon zoning ordinance; hence, there was no need for petitioner to have sought a special use permit.

The pertinent provision of the Babylon ordinance, section 15-264, reads:

"ARTICLE XVI. DISTRICT REGULATIONS: 'H' HEAVY INDUSTRIAL DISTRICT.

"Sec. 15-264. Uses permitted, restricted.

"In 'H' Industrial District, buildings and premises may be used for any purpose whatsoever not in conflict with any ordinance of the town; provided, however, that no building or occupancy permit shall be issued for any of the following uses until and unless the location of buildings and all other appurtenances of the use shall have been approved by the planning board, board of appeals and also approved by the town board, as hereinafter provided".

The section then enumerates 27 types of industrial uses for which approval is required. Immediately following the list, the section concludes: "No use shall be permitted which is found by the town board to be detrimental to the health, welfare and safety of the residents of the town. (Zon. Ord. Rev. 1962, Art. 10, § H-1; Ord. of 3-17-64; Ord. of 12-23-66; Ord. of 5-23-67; Ord. of 10-12-71)." Concededly, automobile shredding is not included among the 27 uses; nor is there any other provision of the ordinance which prohibits an automobile shredding plant in this district.

The area involved, as aforesaid, is zoned for heavy industrial use. The businesses surrounding petitioner's premises run the gamut from automobile part yards, cement plants, iron work plants and junk yards to a Long Island Lighting Company plant which operates jet engines and is located almost directly beyond petitioner's property.

Special Term, in the proceeding commenced by the town board, found that petitioner need not have applied for any permit. We agree. Appellants' plaint is that the broad, inclusive, concluding language of the section should be construed to include the use of a shredder. It may well be that this massive machinery will not enhance the zoning district and could readily be deemed to run contrary to the ordinance's basic conception. The omission, however, cannot be supplied by the courts. This very contention was rejected by the Court of Appeals in *Matter of Westchester County S.P.C.A. v Mengel* (292 NY 121, 126), when it held: "The restrictions on the use of property imposed by the Zoning Ordinance may not be extended by an administrative board or judicial tribunal in order to exclude a use which in its opinion should have been excluded in order to effectuate the purposes set forth in the preamble, nor may we give a strained meaning to the words of the ordinance in order to effectuate its purpose better. Nonetheless, we read this ordinance, as we read all statutes or

ordinances, in the light of its expressed or apparent purpose in order to determine the meaning of its language and to avoid thwarting the intent of the legislative body *as expressed in that language."*

■ The most basic rule of statutory construction comes into play: *expressio unius est exclusio alterius,* which means, roughly translated, that the expression of one thing is the exclusion of another. This is a variant of the rule of *ejusdem generis.*

To adopt the interpretation urged by appellants would be to prohibit virtually all heavy industrial uses without approval of the town board. We find nothing in the statute, nor for that matter in the general rules applicable to zoning, to sanction such a grant of untrammeled discretion.

■ Apart from the consideration of the applicable law, Special Term herein, it should be noted, characterized the myriad efforts of the appellants to frustrate the petitioner's plans as having "deliberately delayed the issuance of the permit in pursuance of a fixed plan to impede and prevent construction of the foundation and building for the automobile shredder." Special Term's language, in our opinion, is particularly apt: "Where public officials charged with the duty of issuing a permit wilfully withold *[sic]* and delay the issuance thereof in bad faith until the ordinance is changed to bar the intended use, the issuance of the permit will be directed, regardless of the amendment of the ordinance (Anderson, N.Y. Zoning Law and Practice, Vol. 1, § 6.17; *James A. Klein Enterprises, Inc. v Biraatz,* 51 AD2d 1021 * * * *Matter of Golisano v Town Board, Town of Macedon* [31 AD2d 85], *supra; Matter of Dubrow v Ross,* 254 App. Div. 706 * * * *Roto Realty Inc. v Volkman,* 49 Misc 2d 506 * * * *Harris v Coffey,* 14 Misc 2d 916 * * *)."

■ In our opinion, the dissent poses the issue conversely. In construing the zoning ordinance, the issue is not whether the use is permissible, but, rather, whether it is prohibited. The general rule, of course, is that zoning ordinances, being in derogation of common law property rights, must be construed strictly against the zoning authority. Of more immediate impact are the rules of statutory construction. The dissent's reliance upon the broad, concluding language of the ordinance ignores the fundamental rule of construction to which we previously referred. To accord validity to the dissent's inter-

pretation would constitute judicial rather than municipal, zoning.

Reverting to the 27 uses in section 15-264 for which a permit is required, it is obvious that, with two relatively minor exceptions, they all denote and provide for heavy manufacturing, industrial uses which traditionally have been regarded as nuisances.

The dissent cites *Matter of Zeifman v Board of Trustees of Inc. Vil. of Great Neck* (40 Misc 2d 130) in support of its conclusion. Special Term there merely held (p 133) that a billiard academy was a recreational rather than a "retail or service business" and, hence, was not of "the same general character". This is not applicable at bar since there is no question but that the use proposed is of the same heavy industrial type as are all the other permitted uses in the area.

*Matter of B & G Constr. Corp. v Board of Appeals of Vil. of Amityville* (309 NY 730) is neither dispositive nor persuasive. There the Court of Appeals, in a memorandum opinion, merely held that the prior issuance of a building permit does not convey a vested right to the issuance of a certificate of occupancy where the building permit was issued in contravention of a zoning ordinance which barred uses which may be "noxious or offensive by reason of the emission of odor, fumes, smoke, dust, gas, vibration or noise". The facilities there erected were "hoppers" used to transfer sand, gravel and cement to concrete mix trucks. The zoning board therein had found that the facility constituted a nuisance because of the noise and dust produced, and also because water overflowed as a result of the operation and the trucks used dropped sand and material upon adjoining highways. Thus, there was no question but that the issuance of a building permit could not sanction or compel the granting of a certificate of occupancy for a facility which violated the zoning ordinance.

The judgment should, therefore, be affirmed.

SUOZZI, J. (dissenting). I dissent and vote to reverse the judgment and dismiss this article 78 proceeding in the nature of mandamus.

The judgment appealed from granted petitioner's application in the nature of mandamus and, *inter alia,* directed that the appellant Chief Building Inspector of the Town of Babylon issue a building permit for the installation and use of an automobile shredder on petitioner's property. In affirming the

judgment, the majority is adopting the determinations of Special Term (DE LUCA, J. and LIPETZ, J.) that the automobile shredder is permitted as a matter of right in an industrial "H" zone by section 15-264 of the Babylon Town Ordinance.

I do not agree with this interpretation for the reasons hereinafter stated and would dismiss this mandamus proceeding on the merits.

Furthermore, insofar as the petition seeks mandamus against the town board, planning board and Building Inspector for failing to implement a special use permit granted by the zoning board of appeals, it must be dismissed on the ground that the special use permit granted by the zoning board of appeals was void *ab initio.*

### FACTS.

The petitioner applied for a permit in the summer of 1976 to construct a foundation and building and to install and operate an automobile shredder, i.e., a huge machine that converts old automobiles into small pieces of metal, in an industrial "H" zone located in the Town of Babylon. On August 26, 1976 the town's Chief Building Inspector notified petitioner that he had decided to refuse to issue a building permit inasmuch as the "operation is not specifically covered by the Town of Babylon Ordinances".

Petitioner applied to the town's zoning board of appeals on or about September 9, 1976 for a special use permit to install and use the automobile shredder. After a public hearing on notice, special permission was granted by the board of appeals for a period of 180 days. Petitioner promptly applied again to the Building Inspector for a building permit. Eventually, the matter was referred to the town planning board. The planning board determined that petitioner's site plans were inadequate and requested revised site plans. The planning board also required that petitioner satisfy the Suffolk County Department of Environmental Control.

In April, 1977 petitioner obtained an extension of six months from the zoning board of appeals for its special use permit. On April 15, 1977 the County Department of Environmental Control advised the Building Inspector that it was satisfied with the plans submitted for air and water pollution control and recommended that the town look further into the "noise and vibration aspects." In mid-May, 1977, the planning

board requested petitioner to submit engineering studies and reports regarding noise and vibration levels. The reports were submitted, but the planning board advised petitioner that its engineering reports were inconclusive and requested the town board to retain an engineer to conduct its own studies.

On June 23, 1977 the planning board advised petitioner's attorney that it was awaiting a decision from the town board with respect to the approval of the application. On July 7, 1977 the Town Attorney, in a memorandum to the planning board, a copy of which was obtained by petitioner's attorney, advised that he had "no knowledge of any reason why a Building Permit could not be issued at this point."

On July 15, 1977 the Town Supervisor instructed the Town Attorney to prepare a resolution to the effect that the shredder represented a serious hazard to the health, welfare and safety of area residents and was, therefore, "an impermissible use of the property." On August 2, 1977 a resolution to that effect was passed by the Town Board of Babylon. On July 18, 1977 the planning board adopted a similar resolution.

Petitioner then instituted this proceeding in the nature of mandamus, returnable August 8, 1977, seeking, *inter alia,* a judgment directing the Building Inspector to grant it a building permit.

Prior thereto, the town board instituted an article 78 proceeding challenging the board of appeals' issuance of a special use permit, and the renewal thereof in April, 1977, for operation of the automobile shredder. Petitioner intervened in that proceeding.

During the pendency of the article 78 proceeding initiated by the town board, the board, on August 2, 1977, upon notice, held a public hearing and adopted a resolution changing the zoning of petitioner's property so that an automobile shredder would be an impermissible use thereon. Petitioner has instituted a declaratory judgment action challenging the validity of the rezoning, which action is still pending and undecided.

By a decision dated August 31, 1977, Special Term (DE LUCA, J.), in the article 78 proceeding commenced by the town board, denied the board's application on the ground that the permit to build the automobile shredder was available to petitioner as a matter of right under the Babylon zoning ordinance and, therefore, that there was no need for the petitioner to have sought a special use permit from the zoning board of appeals in the first instance. An appeal by the town

board from that determination has been taken to this court and is being decided herewith *(Matter of Allmendinger v Ziegner,* 62 AD2d 1053).

On September 9, 1977 the Special Term (LIPETZ, J.) granted the instant application of petitioner for mandamus on two grounds: (1) The determination of Special Term (DE LUCA, J.) to the effect that the petitioner had a clear right to the permit was correct and, in any event, constituted the law of the case; and (2) the town board, planning board and Chief Building Inspector deliberately delayed the implementation of the zoning board of appeals' issuance of a special use permit to petitioner.

### THE LAW.

Upon the denial of the permit by the Building Inspector in the first instance, the petitioner had two alternative remedies available. It could have challenged the Building Inspector's decision within four months of that decision by mandamus (see CPLR 217) or appealed to the zoning board of appeals for an interpretation of that provision.

With respect to the first option, it is clear that the instant mandamus proceeding, commenced a year after the Building Inspector's refusal to issue a permit, ran afoul of the appropriate Statute of Limitations (see CPLR 217). However, that defense was not raised before Special Term or on appeal. Therefore, it must be deemed to have been waived (see CPLR 3211, subd [e]; *Gauthier v Village of Larchmont,* 30 AD2d 303, 306), and this proceeding must, therefore, be determined on the merits.

With respect to the second option, the record indicates that the petitioner did not go to the zoning board of appeals for an interpretation of the ordinance. Instead, petitioner asked the zoning board of appeals for a special use permit and the board granted that application. In the application for the permit, the petitioner referred to the pertinent provision of the ordinance upon which it was relying as "II". After examining those portions of the ordinance which were made available to the court, I presume that what petitioner intended was article II of the ordinance, the heading of which reads "Board of Appeals".

A special use permit, a term which has been used interchangeably with a special exception use or a conditional use,

has been defined as follows: "The granting of a special exception * * * does not entail making an exception to the ordinance but rather permitting certain uses which the ordinance authorizes *under stated conditions* * * * *a special exception is one allowable when the facts and conditions specified in the ordinance as those upon which the exception is permitted are found to exist*" (*Matter of Syosset Holding Corp. v Schlimm,* 15 Misc 2d 10, 11, mod. on other grounds 4 AD2d 766).

The enactment of a zoning ordinance containing a provision for special uses permissible in specified districts upon the granting of a special use permit requires the appointment of some body or officer to administer it, "i.e. to determine whether the special use applied for meets the criteria established by the legislative body and to formulate and attach such conditions as may be required to render such use harmonious with the spirit and intent of the zoning act" (2 Rathkopf, Law of Zoning [3d ed.], ch 54, § 2, p 54-9). Although the zoning ordinance of Babylon, in various sections, gives the zoning board of appeals the authority to issue special use permits (Babylon Ordinance, §§ 15-19, 15-21, 15-24), it does so only for those uses which are specifically designated in the ordinance as permissible with the board of appeals' approval. There is no mention in the ordinance that an automobile shredder is a specific permitted use in an industrial "H" zone, or in any zone, upon approval from the zoning board of appeals.

Accordingly, the zoning board of appeals had no legislative authority to grant a special use permit here. Under such circumstances, the petitioner had no standing to bring this petition for mandamus against the town board, planning board and Building Inspector because of their failure to implement a special use permit which was void *ab initio.*

However, quite apart from this defect of standing, I would, in any event, dismiss the mandamus proceeding against the Building Inspector on the merits because, in my view, section 15-264 of the ordinance does not permit the use of an automobile shredder as a matter of right in an industrial "H" zone. In holding to the contrary, the majority, in my view, misconstrues the clear and unambiguous language of section 15-264 and effectively frustrates the intent of this section.

Section 15-264 of the Babylon zoning ordinance provides as follows:

"In 'H' Industrial District, buildings and premises may be

used for any purpose whatsoever not in conflict with any ordinance of the town; provided, however, that no building or occupancy permit shall be issued for any of the following uses until and unless the location of buildings and all other appurtenances of the use shall have been approved by the planning board, board of appeals and also approved by the town board, as hereinafter provided:

"(1) Acetylene, natural or any type of gas manufacturing or storage

"(2) Acid manufacture

"(3) Arsenal

"(4) Blast furnace

"(5) Boiler works

"(6) Cement, lime, gypsum or plaster of paris manufacture

"(7) Chemical works and manufacture

"(8) Coal tar products manufacture

"(9) Coke ovens

"(10) Distillation of bones

"(11) Dwellings (all types)

"(12) Explosives, manufacture or storage

"(13) Fat rendering

"(14) Fertilizer manufacture

"(15) Fireworks or explosive manufacture or storage.

"(16) Fuel Tanks

"(17) Garbage, offal or dead animal reduction, dumping or incineration

"(18) Gas manufacture (all types)

"(19) Glue manufacture

"(20) Gunpowder manufacture or storage

"(21) Ink manufacture

"(22) Paint, oil, shellac, turpentine or varnish manufacture

"(23) Petroleum products, refining or wholesale storage of petroleum.

"(24) Plastic compounds manufacture

"(25) Public garages and filling stations, unless permitted by the Board of Appeals and subject to the following provisions:

"(a) No repair work shall be performed in the open.

"(b) Pumps, lubricating and other devices shall be located at

least twenty-five (25) feet from the line of any street or highway rights-of-way.

"(c) All fuel, oil or similar substances shall be stored at least thirty-five (35) feet distant from any street or lot line.

"(d) No automobile parts, dismantled vehicles and similar articles shall be stored in the open.

"(26) Smelting of tins, copper, zinc or iron ores

"(27) Stockyards or slaughter of animals.

"No use shall be permitted which is found by the town board to be detrimental to the health, welfare and safety of the residents of the town. (Zon. Ord. Rev. 1962, Art. 10, § H-1; Ord. of 3-17-64; Ord. of 12-23-66; Ord. of 5-23-67; Ord. of 10-12-71)."

By granting the petitioner the relief that it does, the majority has adopted the rationale of Special Term. The memorandum of Mr. Justice LIPETZ, which adopts the decision of Mr. Justice DE LUCA as the law of the case, sets forth this rationale: "Section 15-264 thereof does not enumerate all possible uses permitted in the 'H' Heavy Industrial District, or any uses at all. Rather, it clearly provides that buildings and premises in said district 'may be used for any purpose whatsoever' except those specifically prohibited. And since an automobile shredder is not prohibited, the building inspector's action was patently unreasonable, arbitrary and contrary to the provisions of the ordinance. DeMasco had a clear right to the permit and mandamus lay to compel the issuance thereof (Anderson, N.Y. Zoning Law and Practice Vol. 2, § 22.19; *Little v Young*, 82 NYS 2d 909, aff'd 274 A.D. 1005, 85 NYS 2d 41, aff'd 299 NY 699)."

Although it is not couched in the same language, the decision and rationale of Mr. Justice DE LUCA is comparable.

This rationale is fallacious, in my view, for two reasons. In the first place, it misconstrues the very nature of the 27 enumerated uses. While Mr. Justice LIPETZ refers to those uses as prohibited uses, Mr. Justice DE LUCA refers to them as limited uses. It is clear from the specific language of section 15-264 that the enumerated uses are not prohibited or limited, but in fact are permitted on condition that (a) the "location of buildings and all other appurtenances of the use" are approved by the planning board and also by the zoning board of appeals in the appropriate case (see subdivision [25] of section 15-264, which deals with public garages and filling stations)

and (b) the town board does not find that any of these 27 uses are detrimental to the health, welfare and safety of the residents of the town.

Second, both decisions of Special Term completely fail to come to grips with the meaning and significance of the concluding paragraph of this section of the ordinance, which provides that "[n]o use" shall be permitted which is "found by the town board to be detrimental" to the town's residents.

In order to sustain its interpretation of this section of the ordinance, i.e., that an automobile shredder is a permitted use as a matter of right in an industrial "H" zone, the majority must, of necessity, interpret the words "no use" as being applicable only to the 27 enumerated uses and not to any other use.

Although such an interpretation of the concluding paragraph of this section of the ordinance can be arguably defended at first blush, due to the language and structure of the introductory paragraph thereof (i.e., "buildings * * * may be used for any purpose whatsoever * * * provided * * * that no building or occupancy permit shall be issued for any of the following uses until and unless * * * approved by the * * * town board, as hereinafter provided"), it ultimately falls in view of the clear and unambiguous language of the concluding paragraph of this section of the ordinance, which indicates that "no use" can be permitted in this zone if found to be detrimental by the town board.

Accordingly, the words "no use" in the concluding paragraph of this section of the ordinance apply not only to the 27 uses enumerated in the section, but also to all unspecified uses referred to in the opening sentence of this section.

Moreover, assuming, *arguendo,* that the language in the concluding paragraph of this section of the ordinance is subject to interpretative license, it is my view that (1) the majority's interpretation is unwise from the standpoint of proper planning and completely frustrates the fundamental purposes of zoning in general and this section in particular and (2) an alternative interpretation of this concluding paragraph exists which is preferable to that adopted by the majority.

An examination of the 27 specifically enumerated uses indicates that but for dwellings, the remaining 26 uses are all dangerous, noxious or offensive by reason of the emission of odor, fumes, smoke, dust, gas, vibration or noise. At the time of the enactment of this section of the ordinance, the town

could not possibly have foreseen every technological innovation which would contain the same potential dangers as these 26 prohibited uses. The automobile shredder, which is a huge machine that converts old automobiles into small pieces of metal, is only one example of a recent technological innovation with potentially dangerous side effects which could not have been envisioned by the town authorities at the time of the enactment of the ordinance. The Special Term (DE LUCA, J.) conceded that it was aware of "the potential deleterious effects an automobile shredder may have on the surrounding area in terms of explosions, power brown-outs, high noise levels and the propulsion of pieces of metal into the air toward the surrounding homes", but held that an action for nuisance would be the appropriate remedy. An interpretation which would ultimately subject the public to such hazards and deleterious effects without any control by town authorities, and then impose the further burden on the town of proving a nuisance, is clearly unwise when an alternative interpretation, consistent with good zoning and planning, is available which would avoid the circuitous and cumbersome approach suggested by Special Term. This latter approach is clearly unrealistic in view of the obvious reluctance of any court to completely terminate the operation of a use of such size and expense.

Under these circumstances, an interpretation of the words "no use" in the concluding paragraph of this section as meaning, at the very least, none of the 27 specifically enumerated uses or any other uses of "the same general character" as the 27 specifically enumerated (cf. *Matter of Zeifman v Board of Trustees of Inc. Vil. of Great Neck,* 40 Misc 2d 130, 131), would be more appropriate and reasonable. By interpreting the concluding paragraph of this section of the ordinance in this manner, I do no more than give it a meaning that has been expressly and more artfully set forth in numerous zoning ordinances and has been accepted by the courts as a useful zoning tool (see *Matter of B & G Constr. Corp. v Board of Appeals of Vil. of Amityville,* 309 NY 730). In *B & G (supra),* the applicable zoning ordinance provided that a building could be used for any lawful use in an industrial district except (p 732) "[a]ny use which may be noxious or offensive by reason of the emission of odor, fumes, smoke, dust, gas, vibration or noise". The petitioner therein wanted to build "hoppers" to be used to transfer sand, gravel and cement to concrete mix

trucks. The Court of Appeals upheld the zoning board's denial of a certificate of occupancy on the ground that the operation created dust, noise and gravel.

Pursuant to this approach to this section of the ordinance, any use in the industrial "H" zone would be presumptively permitted unless the town board came forward and met its burden of establishing that the proposed use was detrimental to the health, safety and welfare of the town's residents (cf. *Matter of Fulling v Palumbo*, 21 NY2d 30, 33). Any interpretation of this section, and particularly its concluding paragraph, which gives petitioner the absolute right to build an automobile shredder is, in my view, irreconcilable with proper concepts of zoning planning.

Accordingly, I dissent and vote to reverse the judgment appealed from and to dismiss the instant petition for mandamus on the merits.

MOLLEN, P. J., and SHAPIRO, J., concur with HAWKINS, J.; SUOZZI, J., dissents and votes to reverse the judgment and dismiss the proceeding on the merits, with an opinion.

Judgment of the Supreme Court, Suffolk County, dated September 16, 1977, affirmed, without costs or disbursements.