In the Matter of SAM GERSHOWITZ, Respondent, v PLANNING BOARD OF THE TOWN OF BROOKHAVEN et al., Appellants.

SAM GERSHOWITZ, Respondent, v TOWN OF BROOKHAVEN et al., Appellants.

Second Department, July 30, 1979

APPEARANCES OF COUNSEL

*Joseph R. Mulé, Town Attorney (David P. Fishbein* of counsel), for appellants.

*Christopher Steele* and *Archibald & Bloom (Oscar J. Bloom* of counsel), for respondent.

**OPINION OF THE COURT**

*Per Curiam.*

The prime issue to be decided on this appeal is whether the operation of an automobile shredder on petitioner's premises was a permitted use as of right without the need for a special permit in a light industry (L-1 industrial) zone under section 85-154 of the Brookhaven Town Code. Special Term held that the proposed use and the ordinance involved in this proceeding were "virtually indistinguishable" from those involved in the recent cases of *Matter of De Masco Scrap Iron & Metal Corp. v Zirk* (62 AD2d 92, affd 46 NY2d 864) and *Matter of*

*Allmendinger v Ziegner* (62 AD2d 1053, affd 46 NY2d 864) wherein this court held that an automobile shredder was a permitted use as of right under the Babylon zoning ordinance.

Although the proposed use in the case at bar and the use in *De Masco* are identical, it is our view, contrary to that advanced by Special Term, that the two zoning ordinances are significantly different. In *De Masco* the particular section of the Babylon zoning ordinance permitted all uses as a matter of right with the exception of 27 specifically enumerated conditional uses. Accordingly, this court and the Court of Appeals held that the following concluding provision of the appropriate section of the Babylon zoning ordinance was applicable only to the 27 conditional uses: "No use shall be permitted which is found by the town board to be detrimental to the health, welfare and safety of the residents of the town." In the case at bar the applicable section of the Brookhaven zoning ordinance permits all uses as a matter of right and specifically prohibits per se 78 enumerated uses.[1] Therefore, the following concluding provision of this section of the Brookhaven zoning ordinance, although somewhat similar in language to the concluding provision in *De Masco,* can only be applicable to all uses which are not specifically prohibited per se: "Any other trade, business, industry, use or industrial process that may be injurious, hazardous, noxious or offensive to the surrounding area by reason of the emission of odor, dust, light, smoke, soot, gas, fumes, vibration, noise or similar substances or conditions."

Accordingly, it cannot be held that an automobile shredder is permitted as of right under section 85-154 of the Brookhaven Town Code. Rather, it is our view, for the reasons hereinafter set forth, that this matter must be remanded to the Brookhaven Zoning Board of Appeals for an in-depth hearing to determine if the proposed use will be "injurious, hazardous, noxious or offensive to the surrounding area by reason of the emission of odor, dust, light, smoke, soot, gas, fumes, vibration, noise or similar substances or conditions" pursuant to subdivision (80) of section 85-154 of the Brookhaven Town Code.

If that question is answered in the affirmative, the use will be absolutely prohibited; if answered in the negative, then and

---

1. Effective April 26, 1976, after petitioner had filed his application, the following additional prohibited uses were added: "(79) Shredding of automobiles, scrap metal or other metallic substances."

only then it will be permitted without any conditions or need for a special permit, and a second question will have to be determined in the declaratory judgment action, i.e., whether plaintiff acquired vested rights to operate the automobile shredder before the amendment to the Brookhaven Town Code became effective which prohibited that use in an L-1 industrial zone.

FACTS

In June, 1975 petitioner submitted an application to the Brookhaven Building Department for a "Shredder Plan for Autos" on a 13.3-acre tract zoned L-1 industrial. The application was disapproved "Per 85-154(39)" of the town code. That section provides:

" 'L' Industrial 1 District (Light Industry)

"§ 85-154. Permitted uses.

"In 'L' Industrial 1 District, buildings, structures and premises may be used for any lawful business or industrial use except as otherwise provided in this ordinance and except for the following prohibited uses: * * *

"(39) Junkyard, except when authorized by special permit from the Board of Appeals."

A junkyard is defined in section 85-1 of the zoning ordinance: "JUNK YARD—The use of more than three hundred (300) square feet of the area of any lot, whether inside or outside a building, or the use of any portion of that half of any lot that joins any street, for the collecting, storage or sale of wastepaper, rags, scrap metal or discarded material, or for the collecting, dismantling, storage or salvaging of machinery or vehicles not in running condition or for the sale of parts thereof."

On June 11, 1975 petitioner submitted his site plan to the planning board for review. At that time, a preliminary review was made by a planning board employee and a memo was sent to the building department with no violations listed. This preliminary approval reads as follows:

"The site plan for AUTO SHREDDER PLANT has been given a preliminary review by the Planning Board and appears to be in violation of the following sections of the Town of Brookhaven Zoning Ordinance: [None were listed.]

"Special permit for: SHREDDER PLANT".

In accordance with the building department's implied recommendation that he proceed through the mechanism of a

special permit, petitioner applied to the Brookhaven Zoning Board of Appeals for same.

The notice of public hearing on this issue stated:

"Pursuant to the provisions of Article XXVI, Sec. 85-187 of the Building Zone Ordinance of the Town of Brookhaven, notice is hereby given that the Board of Zoning Appeals will hold a public hearing at the Board Room * * * on Wednesday, July 23, 1975 at 7 P. M. to consider the following:

"1. Sam Gershowitz * * * Applicant requests a special permit for construction of auto shredder plant."

On July 23, 1975, after conducting a hearing at which no opposition to the proposed special permit was adduced, the zoning board of appeals granted the application "as presented". The approval notice also contained the following notation: "This is a notice of approval, it is NOW necessary for you to make application to the Building Department * * * for issuance of required building permit—certificate of occupancy. This grant valid for 6 months from above date."

On August 1, 1975 petitioner wrote to the zoning board asking: "Do I have to apply for this Special Permit at certain intervals or is this permit good for the period of time that I operate this facility?"

On August 6, 1975 the chairman of the zoning board answered as follows: "In reply to the above question, be advised the special permit granted to you on July 23, 1975 is a permanent grant, however, must [sic] be commenced six months from the date of grant."

On September 18, 1975 petitioner submitted his site plan for final approval to the town engineer and the chairman of the planning board pursuant to section 85-160A of the Brookhaven Town Code. That section provides, in pertinent part:

"Site plan review and approval.

"A. In each case where a building, structure or use or any alteration thereof is proposed in this district, the Building Inspector shall refer the site plan of the proposed building, structure or use or alteration thereof to the engineer for the town for his review. There shall be submitted with the application for site plan approval a copy of any restrictive covenant running in favor of the town, or if there is no such restrictive covenant, the applicant shall furnish an affidavit to that effect. The engineer for the town shall determine that all the requirements of this ordinance and other applicable municipal

ordinances, rules, regulations and laws have been complied with. The engineer for the town shall review ingress and egress from and to all public highways to the premises subject to the approval of the appropriate municipal agency having jurisdiction of such highways, all drainage facilities, the traffic pattern within the premises, the location and placement of parking spaces, parking areas, loading areas and spaces, curbs, sidewalks, and access driveways as may be required under this ordinance or by any municipal agency, lights and placement of signs on the premises. The engineer for the town and the Chairman of the Planning Board shall approve, approve with modification or disapprove said site plan. No building permit shall be issued by the Building Inspector without such approval of the site plan and in appropriate cases, authorization by special permit from the Board of Appeals, highway work permits issued by the appropriate municipal agency having jurisdiction over the roads or highways adjacent to the subject premises, permit from the Suffolk County Health Department, and permit from the New York State Department of Labor, if required."

On October 20, 1975 the planning board held a hearing on the said site plan and held the matter in abeyance until another hearing was held on January 5, 1976. On January 5, 1976 the full planning board, by resolution, denied approval to petitioner's site plan on the grounds, *inter alia,* that the proposed automobile shredder violated then subdivision (79) of section 85-154 (later renumbered as subdivision [80] of section 85-154 by amendment dated April 6, 1976, effective April 26, 1976) and section 85-227 of the Brookhaven Town Code which prohibit any use which is "injurious, hazardous, noxious or offensive to the surrounding area by reason of the emission of odor, dust, light, smoke, soot, gas, fumes, vibration, noise or similar substances or conditions". Pursuant to the action of the planning board, the building inspector refused to grant a building permit.

On January 23, 1976 the special permit granted by the zoning board of appeals expired because of a failure to obtain a building permit within six months as required by section 85-188 of the ordinance, which provides:

"Lapse of grant.

"Every variance or application for a special permit granted

by the Board of Appeals pursuant to the provisions of this ordinance shall be and become null and void and of no further force or effect, unless:

"A. Within six (6) months after the date of the grant, determination or decision of the Board of Appeals, a building permit shall have been obtained".

Thereafter, petitioner initiated the underlying CPLR article 78 proceeding to review and annul the afore-mentioned planning board decision and to compel the building inspector to issue a building permit for the automobile shredder. About this time, petitioner applied for and was granted a new special permit for the sole use of the premises as a junkyard. A building permit was issued solely for the use of the premises as a junkyard and the junkyard was completed.

On April 6, 1976 the Brookhaven Town Board amended section 85-154, effective April 26, 1976, by adding the following subdivision as an unconditionally prohibited use in an L-1 district: "(79) Shredding of automobiles, scrap metal or other metallic substances."

Former subdivision (79) was renumbered as subdivision (80). (The town board also amended the zoning ordinance so as to allow an automobile shredder in a heavy industrial district with a special permit.) Petitioner initiated an action to declare the aforesaid amendments unconstitutional and thereafter the article 78 proceeding and the declaratory judgment action were consolidated.

In his declaratory judgment action, plaintiff alleged that he had relied on (1) the special permit granted by the zoning board of appeals and (2) the limited power of the town engineer and chairman of the planning board to review the site plans and not to overrule the granting of a special permit. He claimed that he had already incurred costs and obligations of $596,000 and would ultimately have to pay another $1,100,-000. These figures were contained in the following exhibit in the record, a letter from the accountants for Gershow Auto Parts & Wreckers, Inc., to petitioner's attorneys:

"Gentlemen:

"We are the accountants for Gershow Auto Parts and Wreckers Inc. The following is a schedule of the investment made by Gershow Auto Parts and Wreckers Inc. at their property located at 71 Peconic Avenue, Medford, N.Y.

"Cost of Land

| | |
|---|---:|
| Cash Payments Made | $ 122,000 |
| Mortgage Balance including Interest | 105,000 |
| Clearing and Grading of Land | 23,000 |
| Building | 65,000 |
| Cesspool | 6,000 |
| Blacktop | 6,000 |
| Concrete Curb and Yard | 29,000 |
| Fence | 26,000 |
| Rocks and Gravel | 8,000 |
| Building for Press | 11,000 |
| Diesel Generator for Press | 16,000 |
| Press | 65,000 |
| Scale and Installation | 28,000 |
| Scale—Portable | 4,000 |
| 2 Cranes | 61,000 |
| Bucket For Crane | 6,000 |
| Motor Puller | 10,000 |
| Fuel Tanks (3) | 5,000 |
| Total | $ 596,000 |

"We have been informed that the shredder that is to be purchased will cost $750,000.00 plus the finance charge which will be approximately $350,000.00 which will bring the total cost of the shredder to $1,100,000.00. The finance charge is based on 11% interest rate over 10 years."

### DECISION OF SPECIAL TERM AND THE JUDGMENT APPEALED FROM

In granting the petition, Special Term, as heretofore noted, held that the instant proceeding was "virtually indistinguishable" from the zoning ordinance and proposed use involved in the cases of *Matter of De Masco Scrap Iron & Metal Corp. v Zirk* (62 AD2d 92, affd 46 NY2d 864, *supra),* and *Matter of Allmendinger v Ziegner* (62 AD2d 1053, affd 46 NY2d 864, *supra),* wherein this court held that an automobile shredder was permitted as of right, without the need of obtaining a special permit, under the zoning ordinance of the Town of Babylon.

Special Term found that the planning board's denial of site plan approval was a nullity, since section 85-160A of the zoning ordinance gave the responsibility of approving or disapproving the site plan to the town engineer and the chairman of the planning board and not to the planning board itself. Further, Special Term found that the planning board's con-

duct and action was intended to "deliberately delay the issuance of the [building] permit in pursuance of a fixed plan to impede and prevent construction of the foundation and building for the automobile shredder". Finally, Special Term excused petitioner from his failure to comply with section 85-188 of the Brookhaven Town Code and it dismissed the declaratory judgment action stating that the issue of the amended ordinance's constitutionality "need not be reached".[2]

### THE LAW

Any analysis of the issues presented on this appeal must start with an examination of *De Masco (supra)* and *Allmendinger (supra)*.

In *De Masco,* petitioner applied for a permit in the summer of 1976 to construct a foundation and building and to install and operate an automobile shredder in an industrial "H" zone located in the Town of Babylon. On August 26, 1976 the town's chief building inspector notified the petitioner that he had decided to refuse to issue a building permit inasmuch as the "operation is not specifically covered by the Town of Babylon Ordinances".

The pertinent provision of section 15-264 of the Babylon zoning ordinance provided:

"In 'H' Industrial District, buildings and premises may be used for any purpose whatsoever not in conflict with any ordinance of the town; provided, however, that no building or occupancy permit shall be issued for any of the following uses until and unless the location of buildings and all other appurtenances of the use shall have been approved by the planning board, board of appeals and also approved by the town board, as hereinafter provided:

"(1) Acetylene, natural or any type of gas manufacturing or storage

"(2) Acid manufacture

"(3) Arsenal

"(4) Blast furnace

"(5) Boiler works

"(6) Cement, lime, gypsum or plaster of paris manufacture

---

2. Although Special Term in its memorandum decision stated that the declaratory judgment action should be dismissed, no such provision appears in the judgment appealed from.

"(7) Chemical works and manufacture

"(8) Coal tar products manufacture

"(9) Coke ovens

"(10) Distillation of bones

"(11) Dwellings (all types)

"(12) Explosives, manufacture or storage

"(13) Fat rendering

"(14) Fertilizer manufacture

"(15) Fireworks or explosive manufacture or storage.

"(16) Fuel Tanks

"(17) Garbage, offal or dead animal reduction, dumping or incineration

"(18) Gas manufacture (all types)

"(19) Glue manufacture

"(20) Gunpowder manufacture or storage

"(21) Ink manufacture

"(22) Paint, oil, shellac, turpentine or varnish manufacture

"(23) Petroleum products, refining or wholesale storage of petroleum.

"(24) Plastic compounds manufacture

"(25) Public garages and filling stations, unless permitted by the Board of Appeals and subject to the following provisions:

"(a) No repair work shall be performed in the open.

"(b) Pumps, lubricating and other devices shall be located at least twenty-five (25) feet from the line of any street or highway rights-of-way.

"(c) All fuel, oil or similar substances shall be stored at least thirty-five (35) feet distant from any street or lot line.

"(d) No automobile parts, dismantled vehicles and similar articles shall be stored in the open.

"(26) Smelting of tins, copper, zinc or iron ores

"(27) Stockyards or slaughter of animals.

"No use shall be permitted which is found by the town board to be detrimental to the health, welfare and safety of the residents of the town."

Petitioner applied to the town's zoning board of appeals on or about September 9, 1976 for a special use permit to install and use the automobile shredder. After a public hearing on notice, special permission was granted by the board of appeals

for a period of 180 days. Petitioner promptly applied again to the building inspector for a building permit. Eventually, the matter was referred to the town planning board. The planning board determined that petitioner's site plans were inadequate and requested revised site plans. The planning board also required that petitioner satisfy the Suffolk County Department of Environmental Control.

In April, 1977 petitioner obtained an extension of six months from the zoning board of appeals for its special use permit. On April 15, 1977 the county Department of Environmental Control advised the building inspector that it was satisfied with the plans submitted for air and water pollution control and recommended that the town look further into the "noise and vibration aspects." In mid-May, 1977, the planning board requested petitioner to submit engineering studies and reports regarding noise and vibration levels. The reports were submitted, but the planning board advised petitioner that its engineering reports were inconclusive and requested the town board to retain an engineer to conduct its own studies.

On June 23, 1977 the planning board advised petitioner's attorney that it was awaiting a decision from the town board with respect to the approval of the application. On July 7, 1977 the town attorney, in a memorandum to the planning board, a copy of which was obtained by petitioner's attorney, advised that he had "no knowledge of any reason why a Building Permit could not be issued at this point."

On July 15, 1977 the town supervisor instructed the town attorney to prepare a resolution to the effect that the shredder represented a serious hazard to the health, welfare and safety of area residents and was, therefore, "an impermissible use of the property." On August 2, 1977 a resolution to that effect was passed by the Town Board of Babylon. On July 18, 1977 the planning board adopted a similar resolution.

Petitioner then instituted a proceeding in the nature of mandamus seeking, *inter alia,* a judgment directing the building inspector to grant it a building permit.

Prior thereto, the town board had instituted an article 78 proceeding *(Allmendinger, 62 AD2d 1053, supra)* challenging the board of appeals' issuance of a special use permit, and the renewal thereof in April, 1977, for operation of the automobile shredder.

During the pendency of the article 78 proceeding initiated by the town board, the board, on August 2, 1977, upon notice,

held a public hearing and adopted a resolution changing the zoning of petitioner's property so that an automobile shredder would be an impermissible use thereon. Petitioner instituted a declaratory judgment action challenging the validity of the rezoning.

By a decision dated August 31, 1977, Special Term (DE LUCA, J.), in the article 78 proceeding commenced by the town board, denied the board's application on the ground that the permit to build the automobile shredder was available to petitioner as a matter of right under the Babylon zoning ordinance and, therefore, there was no need for the petitioner to have sought a special use permit from the zoning board of appeals in the first instance.

On September 9, 1977 Special Term (LIPETZ, J.) granted the application of petitioner for mandamus on two grounds: (1) the determination of Special Term (DE LUCA, J.) to the effect that the petitioner had a clear right to the permit was correct and, in any event, constituted the law of the case; and (2) the town board, planning board and chief building inspector deliberately delayed the implementation of the zoning board of appeals' issuance of a special use permit to petitioner. Both judgments of Special Term were appealed to this court.

In affirming the judgments, this court characterized the specifically listed uses in section 15-264 of the Babylon Zoning Ordinance alternatively as "27 industrial manufacturing processes requiring special use permits" (De Masco, 62 AD2d 92, 94, supra) and "27 types of industrial uses for which approval is required" (De Masco, supra, p 97). Since an automobile shredder was not one of the 27 conditionally approved uses in that section of the Babylon zoning ordinance, the majority in De Masco held that (1) an automobile shredder was permissible as of right without the need for a special permit and (2) the "broad, inclusive, concluding language" (De Masco, supra, p 97) of section 15-264 of the ordinance, which reads: "No use shall be permitted which is found by the town board to be detrimental to the health, welfare and safety of the residents of the town", was not applicable to all industrial uses, as urged by the Town of Babylon, but applied only to the 27 listed conditionally approved uses. In this respect, the court in De Masco stated (supra, pp 97-98): "Appellants' plaint is that the broad, inclusive, concluding language of the section should be construed to include the use of a shredder * * * To adopt the interpretation urged by appellants would be to prohibit

virtually all heavy industrial uses without approval of the town board. We find nothing in the statute, nor for that matter in the general rules applicable to zoning, to sanction such a grant of untrammeled discretion."

The zoning ordinance at bar is significantly different from the one in *De Masco.* In the case at bar, the ordinance states that all business and industrial uses are permitted "except as otherwise provided in this ordinance and except for the following prohibited uses". There then follows more than 70 uses which are prohibited (except a junkyard for which a special permit may be obtained). In contrast to *De Masco,* these listed uses are prohibited per se and may not be conditionally approved. Accordingly, the last paragraph of this section which prohibits any business or trade or industry, use of industrial process that "may be injurious, hazardous, noxious or offensive to the surrounding area by reason of the emission of odor, dust, light, smoke, soot, gas, fumes, vibration, noise or similar substances or conditions", clearly is not needed with respect to the 78 listed uses, since they can never be allowed in this zone. Accordingly, this concluding paragraph, which is also more specific than that in *De Masco,* is clearly applicable to all other proposed uses, apart from the specifically prohibited uses. The meaning of this ordinance is clear: apart from the 78 specifically listed uses which are prohibited per se, all other uses are either permissible as a matter of right without the need of a special permit or are absolutely prohibited depending on whether the proposed use is "injurious, hazardous, noxious or offensive to the surrounding area by reason of the emission of odor, dust, light, smoke, soot, gas, fumes, vibration, noise or similar substances" (Brookhaven Town Code, § 85-154, subd [80]; § 85-227). Although the ordinance is not very clear as to how and by whom such a determination is to be made, it would appear that it would be made in the first instance by the building inspector on the basis of the submission made to him with the application, subject to review by the board of appeals and a determination by that body, after a hearing.

In no event could the right to approve or disapprove of this use be given to the planning board under the guise of exercising its power to approve or disapprove site plans. The latter power must be carefully understood. In Rathkopf, Law of Zoning and Planning (vol 2 [4th ed], § 30.04, pp 30-13—30-14), the following description of site plan is given: "A site plan is

not a subdivision plat. A site plan usually evidences the proposed development of a single lot, whether for one principal building and permitted accessory buildings, or for a group of buildings (such as a group residential development or an industrial park), intended to remain in one ownership. A subdivision plat contemplates division of one tract into a number of smaller lots with eventual separate ownership of each such lot. The authority which may be conferred upon planning boards with respect to subdivision plats, and the collateral powers of the board and consequences of its determination with respect thereto, are set forth specifically in the planning enabling acts. Site plans are not even mentioned in such acts. A site plan is a plan required to be submitted by the builder, showing the proposed location of the buildings, parking areas, and other installations on the plot, and their relation to existing conditions, such as roads, neighboring land uses, natural features, public facilities, ingress and egress roads, interior roads, and similar features."

■■ The planning board's authority to review and approve or disapprove site plans, therefore, does not confer upon it power to approve or disapprove a use. Nevertheless, that is what the planning board attempted to do in this case. Under the guise of denying site plan approval, it went into a whole discussion as to whether the shredder would cause all sorts of evils described in subdivision (80) of section 85-154 of the zoning ordinance and made a finding on that issue. However, as heretofore noted, the planning board could not make that finding. That issue could only be resolved by the zoning board of appeals.[3]

Two cases, *Matter of B & G Constr. Corp. v Board of Appeals of Vil. of Amityville* (309 NY 730), and *Matter of Wehr v Crowley* (6 AD2d 214), support this analysis and should be discussed at this point.

In *Matter of B & G Constr. Corp.,* the Court of Appeals, in a memorandum opinion, held that the prior issuance of a building permit did not convey a vested right to the issuance of a

---

3. Special Term held that the Planning Board of Brookhaven did not even have jurisdiction to act with respect to true site plan factors since the Town of Brookhaven Code (§ 85-160A) delegated that power solely to the chief engineer and chairman of the planning board. However, that criticism of the planning board by Special Term was ill founded since it has been held that a zoning ordinance enacted by a town which delegates the authority to approve or disapprove site plans in any one other than the planning board represents an "inordinance exercise of power" (*Nemeroff Realty Corp. v Kerr,* 38 AD2d 437, 442).

certificate of occupancy where the building permit was issued in contravention of a zoning ordinance which barred uses which may be "noxious or offensive by reason of the emission of odor, fumes, smoke, dust, gas, vibration or noise". The facilities there erected were "hoppers" used to transfer sand, gravel and cement to concrete mix trucks. The zoning board therein had found that the facility constituted a nuisance because of the noise and dust produced, and also because water overflowed as a result of the operation and the trucks used dropped sand and material upon adjoining highways.

In *Matter of Wehr v Crowley,* the premises were located in a "C Light Industrial District" in the City of Rochester. Under the applicable zoning ordinance, the premises could not be used for (6 AD2d 214, 216, *supra):*

"3. Brick pottery, tile and terracotta manufacture. * * *

"12. Lime, cement or plaster of Paris manufacture. * * *

"18. Rock or stone crusher. * * *

"32. Any trade, industry or use which is or may be injurious, noxious or offensive by reason of vibration, or noise, or the emission of dust, odor, smoke, gas or fumes."

In *Wehr,* petitioner wanted to erect a building to be used for the manufacture of cement, cinder blocks and accessories. The building superintendent denied a permit because he felt that the proposed use was one of the specifically prohibited uses. The matter was appealed to the zoning board of appeals, which approved the application.

An article 78 proceeding was brought to review the approval and was dismissed. On appeal, the judgment was reversed and the zoning board's determination was annulled because there was no statement of the evidentiary facts supposedly relied on by the board in its answer. What is important is that in *Wehr* the ordinance was virtually identical to the one at bar. Indeed, in *Wehr* the court stated that the proposed use did not come within the three prohibited uses outlined above and that it was the board's duty to have an in-depth hearing as to whether the proposed use was "injurious, noxious or offensive by reason of vibration, or noise, or the emission of dust, odor, smoke, gas or fumes" pursuant to subdivision 32 of the appropriate section of the Rochester zoning ordinance.

Instead of acting in accordance with this interpretation of the Brookhaven zoning ordinance, the zoning board of appeals

granted petitioner a special permit for an automobile shredder. However, the grant of a special use permit by the zoning board of appeals was beyond the legislative authority of the board.

■ A special use permit, a term which has been used interchangeably with a special exception use or a conditional use, has been defined as follows: "The granting of a special exception * * * does not entail making an exception to the ordinance but rather permitting certain uses which the ordinance authorizes *under stated conditions* * * * *[A] special exception is one allowable when the facts and conditions specified in the ordinance as those upon which the exception is permitted are found to exist*" (*Matter of Syosset Holding Corp. v Schlimm,* 15 Misc 2d 10, 11, mod on other grounds 4 AD2d 766).

■ The enactment of a zoning ordinance containing a provision for special uses permissible in specified districts upon the granting of a special use permit requires the appointment of some body or officer to administer it, "i.e. to determine whether the special use applied for meets the criteria established by the legislative body and to formulate and attach such conditions as may be required to render such use harmonious with the spirit and intent of the zoning act" (3 Rathkopf, Law of Zoning and Planning [4th ed], ch 54, § 2, p 54-9). There is no mention in the Brookhaven ordinance that an automobile shredder is a specific permitted use in a light industry zone, or in any zone, upon approval from the zoning board of appeals.

Accordingly, the zoning board of appeals had no legislative authority to grant a special use permit here,[4] and petitioner acquired no vested rights through it.

4. Petitioner attempts to avoid this issue by alleging that the shredder was only an accessory to a junkyard or included in the definition of a junkyard (for which, concededly, a special permit can be granted under the Brookhaven Town Code). Neither argument is persuasive. An accessory use is defined in section 85-1 of the Brookhaven Town Code as: "ACCESSORY BUILDING, STRUCTURE OR USE—A building structure or use customarily incidental and subordinate to the principal building or use and located on the same lot with such principal building or use." The magnitude of the shredder precludes its description as an accessory. Indeed, the notice of hearing before the board of appeals as well as that body's approval referred to the request as one for a special permit for an automobile shredder. With regard to the definition of a junkyard, common sense dictates that a junkyard is for storage of junk and to the extent salvaging is involved, it envisions manual salvaging or perhaps light wrecking and not a machine as large as an automobile shredder.

Nor can it be argued on this record that the zoning board of appeals, while improperly granting a special permit, nevertheless considered subdivision (80) of section 85-154 and, therefore, impliedly determined that the proposed use would not be injurious, hazardous, noxious or offensive under the standards of that section. It is true that in determining whether a special permit should be granted, the board must determine, pursuant to section 85-187 (subd B, par [2], cls [e], [f]), "[w]hether the use, or materials incidental thereto, or produced thereby, may give off obnoxious gases, odors, smoke or soot * * * [or] cause disturbing emission of electrical discharges, dust, light, vibration or noise." However, although section 85-187 (subd B, par [2], cls [e], [f]) of the ordinance is strikingly similar to subdivision (80) of section 85-154 and section 85-227 of the Brookhaven Town Code, the zoning board of appeals made no specific finding with regard to the former, and the minutes of the hearing before the zoning board are not before us, so that the record at present does not permit an intelligent review of what testimony, if any, was adduced before the board as to the effects of the proposed use.

Since petitioner was improperly advised by the Brookhaven Building Department to proceed through the vehicle of a special permit, he should not at this point be totally foreclosed from establishing that the proposed use will not violate the standards set forth in subdivision (80) of section 85-154 of the Brookhaven Town Code. Accordingly, the judgment in favor of petitioner in the article 78 proceeding should be reversed and this matter should be remanded to the Brookhaven Zoning Board of Appeals for an in-depth hearing on this particular issue. If it is determined that the use will be "injurious, hazardous, noxious or offensive" pursuant to the standards set forth in subdivision (80) of section 85-154 of the Brookhaven Town Code, then the shredder must be prohibited. However, if petitioner is successful in demonstrating to the board that his proposed use of an automobile shredder will not be "injurious, hazardous, noxious or offensive" pursuant to the standards set forth in subdivision (80) of section 85-154, then a second question will have to be decided, i.e., whether his right to use the shredder vested before the law was changed.

■ With regard to vesting, the court in *Matter of Smith v Spiegel & Sons* (31 AD2d 819, 820), set forth the following two rules: "There are two rules to be applied in determining whether a party has acquired vested rights to a building

permit prior to a zoning resolution amendment which would prohibit such use. The first, which applies where no permit has been issued, is that the party is entitled to permit when the public officials in question willfully withhold and refuse to issue the permit and, in addition, mislead and hinder him, to the end that if they had acted with reasonable promptness his permit would have been granted and he could have conducted the business in question and thereby could have acquired a vested right prior to the zoning amendment *(Matter of Dubow v. Ross,* 254 App. Div. 706). The second, which applies where a permit has been issued, is that vested rights are acquired where the property owner has commenced work of a substantial character on the property prior to the amendment *(Matter of Andgar Assoc. v. Board of Zoning Appeals,* 30 A D 2d 672; *Matter of Glenel Realty Corp. v. Worthington,* 4 A D 2d 702)."

[1] The first approach to vesting is usually tested through an article 78 proceeding and, as heretofore noted, Special Term treated this case under the first approach and found in petitioner's favor without even conducting a hearing, citing the following language from *Matter of De Masco* (62 AD2d 92, 98, *supra):* " 'Where public officials charged with the duty of issuing a permit wilfully withhold *[sic]* and delay the issuance thereof in bad faith until the ordinance is changed to bar the intended use, the issuance of the permit will be directed, regardless of the amendment of the ordinance [citations omitted].' " However, on this particular issue, the facts in *De Masco* are clearly distinguishable from those in the case at bar. In *De Masco,* the planning board delayed its voting for more than six months and did not make its decision rejecting the site plan until several days after the town supervisor instructed the town attorney to prepare a resolution (which was passed by the town board two and one-half weeks later) that the shredder represented a serious hazard to the health, welfare and safety of the area's residents. Under those facts, Special Term in *De Masco* correctly held that the town authorities had withheld the permit in bad faith until the ordinance was changed. In the case at bar, the planning board rejected the site plan within four months of its submission to the chairman and the town engineer, and approximately three months before the ordinance was amended. Under these circumstances, the record does not support Special Term's conclusion that the Town of Brookhaven willfully withheld the issuance of a building permit until the ordinance was amended.

■ ■ However, if petitioner is successful on the remand with respect to the threshold issue of compliance with subdivision (80) of section 85-154, he would be entitled to demonstrate that his right to use the automobile shredder vested under the second theory set forth in *Matter of Smith v Spiegel & Sons* (31 AD2d 819, *supra),* i.e., that he commenced work of a substantial character on the property prior to the amendment. This is precisely the issue raised in the declaratory judgment action. With respect to this theory of vesting, the majority rule, with which New York concurs, is as follows (3 Rathkopf, Law of Zoning and Planning [4th ed], ch 57, § 3, pp 57-6—57-7): "A landowner will be held to have acquired a vested right to continue the construction of a building or structure and to initiate and continue a use despite a restriction contained in an ordinance where, prior to the effective date of the ordinance, in reliance upon a permit theretofore validly issued, he has, in good faith, made a substantial change of position in relation to the land, made substantial expenditures, or has incurred substantial obligations."

In New York, in particular, incurrence of obligation alone, without a substantial change in the land itself after a valid permit has issued, is not sufficient to vest any right to completion. Rathkopf states (vol 3 [4th ed], ch 57, § 5, pp 57-10—57-11): " 'The test, generally speaking, is whether the petitioner had actually begun construction, not whether it had spent money in preparation to build (Rice v. Van Vranken, 132 Misc. 82 * * * affirmed 255 N. Y. 541 * * *); or whether the petitioner had physically used the land for the construction contemplated (People ex rel. Ortenberg v. Bales, 250 N. Y. 598 * * *).' "

In *Cooper v Dubow* (41 AD2d 843, 844), this court, in holding that no vesting had occurred, stated: "[P]laintiffs demolished existing structures on their properties, prepared and filed architects' plans and drawings, made test borings, obtained H. U. D. approval of the sites for their proposed apartments, and negotiated with contractors to build the apartments. They did not, however, break ground or actually commence construction. In our opinion this was not the commencment of work of such substantial character as to give them vested rights."

It is generally true that no vesting of rights will be recognized under this theory until a building permit has been issued "irrespective of the magnitude of the expenditures

made in reliance upon the continuance of the existing zoning for the period reasonably necessary to secure the permit and act upon it" (3 Rathkopf, Law of Zoning and Planning [4th ed], ch 57, § 7, p 57-14), and no building permit was ever issued in this case. However, this court, in *Matter of Glenel Realty Corp. v Worthington* 4 AD2d 702), departed from that strict requirement. In *Glenel,* this court held that vested rights had been acquired by the petitioner in reliance on four permits issued for the excavation and foundation work by completing all the excavation work, pouring all the concrete for the foundations and almost completing them and by assuming contractual obligations aggregating $787,726, on which it had actually made payments of $212,281. The court stated *(supra,* pp 702-703): "It is immaterial under the circumstances here present that some of these obligations and some of these payments may have antedated the permits * * * *Indeed, all the obligations may well be said to have been justifiably assumed and all payments may well be said to have been justifiably made in reliance on the permits—whether such reliance was upon their anticipated, or upon their actual, issuance."*

Accordingly, the judgment appealed from should be reversed and the matter remanded to the Brookhaven Zoning Board of Appeals for an in-depth hearing as to whether petitioner's proposed use violates the standards set forth in subdivision (80) of section 85-154 of the Brookhaven Town Code. Pending that determination, plaintiff's declaratory judgment action should be dismissed, without prejudice to renewal if petitioner ultimately establishes that the proposed use will not violate the standards of subdivision (80) of section 85-154 of the Brookhaven Town Code.

Suozzi, J. P., O'Connor, Martuscello and Mangano, JJ., concur.

Judgment of the Supreme Court, Suffolk County, entered August 24, 1978, reversed, on the law, without costs or disbursements, the matter is remitted to the Zoning Board of Appeals of the Town of Brookhaven for further proceedings in accordance with the opinion herein, and the declaratory judgment action is dismissed, without prejudice to renewal, in accordance with the opinion herein.